STATE of Wisconsin, Plaintiff-Respondent,

v.

Roger DEER, Defendant-Appellant.†

Court of Appeals

*No. 84–1801–CR. Submitted on briefs March 29, 1985.—
Decided June 25, 1985.*
(Also reported in 372 N.W.2d 176.)

† Petition to review denied.

For the defendant-appellant, the cause was submitted on the briefs of *Jack E. Schairer* and *William J. Tyroler*, assistant state public defenders.

For the plaintiff-respondent, the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *John J. Glinski,* assistant attorney general.

Before Scott, C.J., Nettesheim, J., and Robert W. Hansen, Reserve Judge.

HANSEN, R.J.  Roger Deer appeals his conviction of two counts of enticing a child for immoral purposes, sec. 940.32(2), Stats.[1]  He claims (1) the evidence introduced was insufficient to convict him of either count; (2) the trial court improperly instructed the jury on the element of custody, and (3) improper juror conduct occurred mandating mistrial.  For the reasons discussed below, we disagree with all of Deer's arguments.  Deer also maintains that the trial court's failure to consider a sentence reduction requires a remand for consideration of this issue.  We observe no grounds for a remand. Accordingly, we affirm.

The two minors involved were D.J., thirteen, and D.B., twelve.  Both girls were living in a group home in Sheboygan on February 17, 1983.  According to the girls' testimony, Deer met the girls twice before school and they engaged in a conversation.  After school, Deer picked them up and drove them several places before dropping them off at the home of D.J.'s boyfriend.  As the girls were already late returning from school and would face punishment, Deer arranged to have them stay at a friend's home in Sheboygan.  He then picked them up the next morning, and they drove to Cameron, Louisiana.

---

[1] Section 940.32(2), Stats., reads as follows:

Abduction.  Whoever, for any unlawful or immoral purpose, does any of the following is guilty of a Class C felony:

. . . .

(2) Entices any child under 18 years of age from his home or the custody of his parent or guardian . . . .

Deer first asserts that the evidence was insufficient to sustain a conviction because there was no evidence that he "enticed" the girls. In other words, Deer maintains that the girls decided to run away on their own initiative to avoid punishment; he simply provided the means of transportation. We disagree.

A reviewing court will uphold a jury verdict unless it finds that the evidence, considered in a light favorable to the state, is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact acting reasonably could be convinced to that degree of certitude which the law defines as beyond a reasonable doubt. *State v. Spanbauer,* 108 Wis. 2d 548, 552, 322 N.W.2d 511, 513 (Ct. App. 1982). The credibility of the witnesses is the province of the trier of fact. *Wheeler v. State,* 87 Wis. 2d 626, 634, 275 N.W. 2d 651, 655 (1979).

The trial court, in its instructions to the jury, explained:

The first element of this offense requires that the defendant enticed [the girls]. *To entice means to induce, tempt, coax or persuade a person to do a thing.* [Emphasis added.]

D.J. testified that before school she had spoken to Deer and he had offered to take them if they ran away "but we decided not to, and we were going to see how we liked it [at the group home]." His offer was renewed while driving around in Deer's car after school when the girls discovered they were late returning to the group home. He arranged for a place for them to stay and agreed to pick them up the next morning. Finally, the next day, after picking up the girls, he had them hide "underneath some covers and stuff" while he stopped back home to pick up some items.

D.B.'s testimony was substantially similar. Although she did not speak to Deer or hear his conversation with

D.J., D.J. relayed the substance of the conversation to D.B. D.B. stated that as of February 17, they hadn't really planned to run away, although they had talked about running in a month or so. It was only when they realized they were late returning from school that they decided to run.

As stated in the comments to Wis J I—Criminal 1530, the words "persuade" and "entice" consist of some acts or words intended to cause a person to do something the other person would not otherwise do. Considerations of age, mental development, relationship to each other, sophistication or lack thereof and all other facts and circumstances shown by the evidence enter into a determination of whether a child was enticed.

We hold sufficient evidence exists in the testimony of the two girls to uphold the jury determination that they were "enticed." Deer's frequent appearances at and around school on the 17th, his causing the girls to be late returning from school, his repeated offers to take them with him, his arranging a place for them to stay overnight and hiding them in his van the next morning could easily convince a jury that D.B. and D.J. were "enticed." The fact that the girls stated they ran because they were afraid of being punished does not alter this conclusion. Instead, it could be argued that Deer "set them up," creating the situation where they were faced with punishment and then offering them an avenue to avoid the punishment.

Deer next asserts that the state failed to prove he removed the youths from custody. The jury was instructed as follows:

The third element of this offense requires that the defendant, Roger Michael Deer, by enticing, removed [D.B.] from the *custody* of her guardian.

Legal custody means the right to care, custody and control of the child, and the duty to provide food, cloth-

ing, shelter, ordinary medical care, education and discipline for the child. A child is in the *custody* of a guardian even while the guardian is not present if the guardian has the right of control of the child.

Legal custody may be transferred by court order from a child's parents to an agency authorized under the Juvenile Code to receive legal custody of a child. The Sheboygan County Department of Social Services is such an authorized agency. . . .

The third element of this offense requires that the defendant, by enticing, removed [D.J.] from the *custody* of her parent.

Legal custody means the right to care, custody and control of a child, and the duty to provide food, clothing, shelter, ordinary medical care, education and discipline for the child.

A child is in the *custody* of a parent even while the parent is not present, if the parent has the right of control of the child. [Emphasis added.]

On appeal, Deer claims the state did not prove he deprived anyone of their *legal* custody over the girls. Although he may have physically removed the girls from their custodian, the jury was not instructed as to physical custody; therefore, Deer reasons, the jury in following the instructions could only have convicted him if he denied the custodians of their legal custody. We disagree with Deer's analysis of the jury instructions.

Wisconsin courts have long recognized the substantive right of parents to the custody of their children. *See Barstad v. Frazier*, 118 Wis. 2d 549, 567–68, 348 N.W.2d 479, 488–89 (1984); *In re Fish*, 246 Wis. 474, 477, 17 N.W.2d 558, 559 (1945); and *Lacher v. Venus*, 177 Wis. 558, 568, 188 N.W. 613, 617 (1922). This right of parents to the custody of their children carries with it certain obligations associated with the word "parent"— "the person or persons who share a mutual love and affection with a child and who *supply the child support and maintenance, instruction, discipline and guidance."* *See Solberg v. Metropolitan Life Insurance Co.*, 50 Wis.

2d 746, 753, 185 N.W.2d 319, 323 (1971) (emphasis added).

Legal custody can be legally transferred only by order of the court. *See* sec. 48.02(12), Stats. The person or agency receiving custody of that child via the court order becomes the child's "legal custodian." Sec. 48.02(11). That is not to say that the parents are not the legal custodians of a child under normal circumstances. Assuredly, they are. However, when this status of "custodian" has been transferred by order of the court, a legal term of art is created for the new custodian—*i.e.*, "legal custodian." The rights and responsibilities conferred by an order of the court is described in sec. 48.02(12):

> "Legal custody" means a legal status created by the order of a court, which confers the right and duty to protect, train and discipline the child, and to provide food, shelter, legal services, education and ordinary medical and dental care, subject to the rights, duties and responsibilities of the guardian of the child and subject to any existing parental rights and responsibilities and the provisions of any court order.

*See State v. Britzke,* 110 Wis. 2d 728, 329 N.W.2d 207 (1983), where the supreme court used the identical sec. 48.02(12) language in affirming a conviction under a similar statute, sec. 946.71(2), Stats. As can be seen, "legal custody" means the transference by court order of the same rights and responsibilities accorded to a parent as custodian of a child.

When the trial court gave its instructions as to D.B., the court was correct in using the term "legal custody" because custody had been transferred to the group home by an order of the court. In the case of D.J., however, legal custody had never been transferred and remained with the mother of the minor. Placement in the group home with the full consent of the mother did not affect the status of custody. It is no different than taking a minor to the hospital for a tonsillectomy, to the grand-

parents for a weekend visit or to a summer camp. Legal custody remained with the mother. But what the instructions defined are the duties and obligations of one accorded lawful custody—whether that custody rests in the hands of a parent or a guardian. What the jury heard and understood is "custody" as that term is defined in the law.

It is presumed that juries look to the plain meaning of the jury instructions and once instructed follow these instructions. *See, e.g., Johnson v. Pearson Agri-Systems, Inc.,* 119 Wis. 2d 766, 776, 350 N.W.2d 127, 132 (1984). The definition as given would not cause the jury to look beyond "custody." And by enticing the children out of the jurisdiction, Deer deprived these custodians of the ability to perform the duties and reap the benefits that flow from a custody relationship.

The problem with Deer's analysis is that it attempts to confuse the realities of an abduction with "legalese." All custody authorized under the law is legal custody— whether it is the responsibilities of a parent to his or her child or whether it is a legal transference of responsibilities via court order. One who interferes with the rights and responsibilities of a custodian has violated this relationship.

By enticing the child out of the jurisdiction, Deer destroyed all aspects of a custodial relationship—both the custodian's duty to provide food, clothing, etc., and the benefits (both tangible and intangible) conferred by the relationship. Therefore, the instruction, while arguably using an appropriate term of art with a somewhat specific meaning in the law, was not erroneous and could not have led to juror confusion or misinterpretation. No prejudicial error occurred.[2]

---

[2] Deer also argues it was error to submit this instruction over defense objection. Because we hold the instruction was not prejudicial error, we will not discuss this issue.

Deer also maintains it was error for the trial court not to grant its own *sua sponte* motion for mistrial. Alternatively, Deer argues that we should remand for individual *voir dire* examination of the jurors as to the effect, if any, of any extraneous information brought to the jury's attention. *See State v. Poh,* 116 Wis. 2d 510, 343 N.W.2d 108 (1984).

During the second day of trial, the court received a note with questions from one of the jurors. Upon receiving the note, the court asked the juror to identify himself and the following occurred:

COURT: Are those questions that are your own or did they come up in discussion in the jury room?

JUROR: They were my own at first, and then after I had written them down, then I brought it to the attention of the other jurors and asked do we feel these questions were brought out during this trial or weren't they, and they all felt they weren't. And then I said, well, I am going to present these, and they said, fine.

The discussion among the jurors was against the court's order not to discuss the case among themselves or with their family until they had heard all of the evidence. However, the jurors had been invited to submit any question arising in their minds during the course of the trial to the court. Unfortunately, one juror shared his questions with the other members of the jury before he turned it over to the trial court.

The trial court explained that one question was not relevant to their decision and, as to the second question, responded that the jury should review the evidence to reach a conclusion. The court then admonished the jury and once again told them not to discuss the case amongst themselves until they began deliberations.

We think that both Deer and the state miss the mark by discussing this issue in terms of *State v. Poh* and sec. 906.06(2), Stats., which address competent juror testimony when seeking to impeach a verdict. This is because

Deer did not seek a *Poh*-type hearing until the post-conviction stage of the proceedings. Actually, it was the trial court which *sua sponte* raised the prospect of declaring a mistrial. The trial court then took its own motion under advisement. Deer did not request any *voir dire* of the jurors. Instead of granting a mistrial, the trial court responded to the juror's questions by indicating that one was not relevant to their decision and another could be answered by reviewing the evidence.[3] In addition, as noted, the trial court further admonished the jury not to discuss the case amongst themselves until deliberations began.

By waiting until the post-conviction proceedings to seek a *Poh*-type hearing, Deer has waived his right to such hearing. Such a request must be made at the time the juror misconduct is made known to the defendant or as soon thereafter as is practical. Here, Deer instead chose to proceed with final arguments, jury instructions, jury deliberations and sentencing before raising the issue.

Alternatively, even if sec. 906.06(2), Stats., should govern this issue, we conclude that the juror's question was not competent evidence to impeach the verdict. Under sec. 906.06(2), a juror may not testify as to any matter or statement affecting his decision, except with regard to either extraneous prejudicial information improperly brought to the juror's attention or any outside influence. In addressing this issue, a three-step procedure has been prescribed for determining when a verdict has been overturned: (1) Is the proffered evidence com-

---

[3] Although the record does not reveal an express denial of the court's own motion for mistrial, we construe the trial court's answers to the questions and its cautionary instruction as an implicit denial of the mistrial motion.

petent under sec. 906.06(2) ; (2) Does the evidence show substantial grounds sufficient to overturn the verdict, and (3) Was the party seeking to impeach the verdict prejudiced, requiring that the verdict be upset. *State v. Shillcutt,* 119 Wis. 2d 788, 793, 350 N.W.2d 686, 689 (1984).

On the basis of the record before us, we hold that the proffered evidence is not competent under sec. 906.06(2), Stats. Therefore, we will not reach the second and third steps of the analysis.

In order for the juror's remark to be competent, it must be either "extraneous prejudicial information" or constitute "outside influence." *Id.* at 794, 350 N.W.2d at 690. We hold the note does not qualify as either. First, the note which was read aloud did not supply information but *requested* information. Second, the juror probably felt he had acted within the court's earlier instructions which stated, "[i]f, during the course of the trial . . . you have any questions which you would like answered, please write that on a piece of paper." We do not perceive the request for information and the preceding discussion as qualifying as "extraneous" prejudicial information. There is no indication that prejudicial knowledge "coming from the outside" was communicated. *Id.* Nor has it been suggested that the statement falls under the category of outside influence. We conclude, based on our reading of sec. 906.06(2), Stats., and *Shillcutt,* the statements written here are not competent evidence to impeach the jury's verdict.

Finally, Deer contends the failure of the trial court to consider a reduction of sentence mandates a remand to the trial court for consideration of this issue. Deer has filed a motion for post-conviction relief pursuant to sec. 809.30, Stats. When the trial court failed to act within the allotted time, the court filed an order deeming the motion denied. Sec. 809.30(1)(g). It is this procedure Deer takes issue with.

The 1978 Judicial Council Committee's Notes to this section explain the rationale behind this procedure:

Many changes are made in prior practice in criminal cases . . . . Under the former procedure counsel . . . was required to order a transcript, wait for its preparation, review it, present to the trial court by a post-trial motion any issues which the defendant desired to raise on appeal . . . and *after the court ruled on the motion,* appeal both the original conviction and the denial of the post-trial motion to the Supreme Court. . . .

The procedures in this section are designed to expedite the entire process *by putting time limits on each step* and by eliminating the necessity of each issue being presented twice to the trial court. [Emphasis added.]

The law was, therefore, promulgated for the protection of the criminal defendant in order to expedite the appeal process and to prevent an overburdened trial court from delaying the defendant's right to appeal. Once having appealed, the sentencing decision is reviewable by this court in the same manner that all discretionary acts are to be reviewed. *State v. Macemon,* 113 Wis. 2d 662, 667, 335 N.W.2d 402, 405 (1983).

In the instant case, Deer does not seek review of the sentence imposed nor does he assert the sentence was an abuse of the trial court's discretion. Rather, he claims it is unfair to have allowed the limitation period to lapse without receiving a ruling. The legislature imposed the limitation periods in sec. 809.30(1)(g), Stats., to protect and expedite the defendant's right. There are no grounds for a remand.

*By the Court.*—Judgment affirmed.