STATE of Wisconsin, Plaintiff-Respondent,

v.

Richard M. SCHERREIKS, Defendant-Appellant.†

Court of Appeals

*Nos. 88-1733-CR, 88-1734-CR, 88-1735-CR. Submitted on briefs April 3, 1989.—Decided November 2, 1989.*

(Also reported in 451 N.W.2d 759.)

†Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *James C. Ritland,* of Black River Falls.

For the plaintiff-respondent the cause was submitted on the brief of *Donald J. Hanaway,* attorney general, and *Barry M. Levenson,* assistant attorney general.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

GARTZKE, P.J.   Richard Scherreiks appeals from judgments of conviction and an order denying his postconviction motions to modify the sentences imposed following his guilty pleas to three charges: attempted criminal damage to property, party to a crime, secs. 943.01(2)(d), 939.05, and 939.32, Stats.; intimidation of a witness, party to the crime, secs. 940.43(1), (2), and (3) and 939.05, Stats.; and second-degree murder, party to the crime, secs. 940.02(1) and 939.05, Stats. 1985. The trial court sentenced defendant to the maximum two and one-half years on the attempted criminal damage charge, to the maximum five years on the intimidation charge, and to fifteen years (five less than the maximum) on the second-degree murder charge. The sentences are consecutive.

Defendant contends that the trial court abused its discretion by denying his postconviction motions without a hearing and without giving reasons. We conclude on the basis of *State v. Deer,* 125 Wis. 2d 357, 372 N.W.2d 176 (Ct. App. 1985), that the trial court's error does not entitle defendant to a remand. He repeats the same contentions he raised in his postconviction

motions: that for reasons specific to each sentence, the trial court abused its discretion; that the court's use of victim-impact statements was error for evidentiary reasons; and that the sentences constitute cruel and unusual punishment. Because defendant appealed from the judgment of conviction, and we construe his appeal to be also from the sentences, we conclude he is entitled to a review as of right of the claimed sentencing errors. We reject his contentions and affirm.

Before he pled guilty, defendant volunteered to the Monroe county sheriff's office that he committed the crimes. He admitted that in June 1985 he and his nephew, Andy Scherreiks, attempted to damage a neighbor's cranberry crop by flooding it. That act is the basis for the attempted criminal damage charge. He admitted that in September 1986, he and Tracy George made threatening statements to Andy before Andy was to testify in pending criminal proceedings against defendant and Tracy. Those statements gave rise to the intimidation charge.

Defendant confessed that he had cooperated with Tracy in a plan to kill Andy and cover up the crime. On October 30, 1986, Tracy left the farm where the three men worked and was carrying a gun. Tracy planned to force Andy to sign a note stating that he left town. Andy's vehicle and the note would be left at a bus station. Defendant confessed that he went to the bus station to pick up Tracy but Tracy was not there. A short time later, Tracy told defendant he had killed Andy and asked for plastic bags to bury the body. Defendant gave him the bags and washed Tracy's clothes, which were covered with mud and swamp water.

After his confession, defendant helped the sheriff's department search for Andy. The body was eventually found on December 31, 1986, and the state charged

defendant with second-degree murder, party to the crime. Defendant voluntarily took a lie detector test regarding his involvement. The test results indicated he was being truthful.

Pursuant to a plea bargain, defendant pled guilty to all charges and agreed to testify in George's murder trial. Defendant testified as he had agreed. George was found guilty of intimidation of a witness and burglary but not murder. The sheriff testified at defendant's sentencing hearing that he felt defendant's testimony at George's trial had been "consistent."

On September 14, 1987, the trial court adjudged the defendant convicted on his guilty pleas and sentenced him to the terms previously described. Following that hearing, the judgments and sentences were entered. On March 16, 1988, defendant timely filed his motions for postconviction relief, brought pursuant to sec. (Rule) 809.30(2)(h), Stats. He attached to his postconviction motions a memorandum in which he made largely the same contentions he raises on appeal.

On appeal he raises the new claim that the court abused its discretion by denying his motions without a hearing and without stating reasons. We first discuss the new claim and reject it. Because the trial court failed to timely decide defendant's postconviction motions, it lacked competency to enter the order appealed from. That failure is not grounds for a remand.

The time for deciding postconviction motions is controlled by sec. (Rule) 809.30(2)(i), Stats., which provides:

> The trial court shall determine by an order the defendant's motion for postconviction relief within 60 days of its filing or the motion is considered to be denied and the clerk of the trial court shall immediately enter an order denying the motion.

515

On May 16, 1988, we exercised our discretion under sec. (Rule) 809.82(2)(a), Stats., and extended the time for the trial court to decide the postconviction motions until August 14, 1988. On August 20, 1988, six days late, the trial court signed the order denying defendant's motions.

Since the trial court failed to timely rule on defendant's postconviction motions, it lacked competency to enter the order appealed from. *Cf. Jansen Co. v. Milwaukee Area Dist. Board,* 105 Wis. 2d 1, 10 & n. 7, 312 N.W.2d 813, 817 (1981) (trial court lost competency to decide timely filed motion for new trial after time limit in sec. 805.16, Stats., expired). A trial court's failure to timely decide a postconviction motion regarding a sentence is not grounds for a remand, since the purpose of the time limit is to expedite the postconviction process. *State v. Deer,* 125 Wis. 2d at 367–68, 372 N.W.2d at 182–83. We treat the order as a nullity.[1]

We nevertheless review the claimed sentencing abuses. We have jurisdiction to do so even though the postconviction order is a nullity. Defendant appealed not only from that order but also from the judgments of conviction which imposed the sentences. To obtain a review as of right of the claimed sentencing errors, defendant had to file postconviction motions under sec. (Rule) 809.30, Stats. *State v. Meyer,* 150 Wis. 2d 603, 606, 442 N.W.2d 483, 485 (Ct. App. 1989). He did so, and

---

[1] If a trial court attempts to *grant* relief, but its order is untimely, an appellate court may grant the same relief pursuant to its discretionary power of reversal. *Jansen Co.* at 10–11, 312 N.W.2d at 817; secs. 751.06 and 752.35, Stats. Those of course are not the facts before us. The trial court made no attempt to grant any relief.

it was the trial court's error, not his, which resulted in the motion never being decided. As we have said, because defendant also appealed the judgments of conviction and we construe his appeals also to be from the sentences, he is entitled to review as of right of the claimed sentencing errors. *Deer* at 368, 372 N.W.2d at 183. We next undertake that review and find no error.

Our review is limited. Sentencing is a discretionary act. *McCleary v. State,* 49 Wis. 2d 263, 277, 182 N.W.2d 512, 519 (1971). The presumption is that the sentencing court acted reasonably. *State v. Thompson,* 146 Wis. 2d 554, 565, 431 N.W.2d 716, 720 (Ct. App. 1988). The defendant must show an unreasonable or unjustifiable basis in the record for the sentence complained of. *Id.* A strong policy exists against interference with the discretion of the sentencing court. *State v. Tuttle,* 21 Wis. 2d 147, 150, 124 N.W.2d 9, 11 (1963). We will not interfere unless the court abused its discretion, and we will find no abuse of discretion if we find a reasonable basis for the court's determination. *McCleary* at 277, 182 N.W.2d at 520.

The primary factors a sentencing court should consider are the gravity of the offense, the character of the offender, and the need to protect the public. *Id.* at 275–76, 182 N.W.2d at 519. Additional and related factors exist, such as those listed in *State v. Harris,* 119 Wis. 2d 612, 623–24, 350 N.W.2d 633, 639 (1984). The weight to be given to each factor is within the discretion of the trial court. *State v. Curbello-Rodriguez,* 119 Wis. 2d 414, 434, 351 N.W.2d 758, 768 (Ct. App. 1984).

We reject defendant's contention that the trial court erred when imposing the maximum two and one-half-

year sentence for attempted criminal damage to property. At the sentencing hearing Scherreiks's counsel advised the court: "[W]e concur with the presentence [report] in asking for a prison sentence . . . of the two-and-a-half [years] for the felony criminal damage to property." Because defendant affirmatively approved the sentence, he cannot attack it on appeal. *Cf. State v. Michels,* 141 Wis. 2d 81, 97–98, 414 N.W.2d 311, 317 (Ct. App. 1987) (appellant estopped from contending evidence insufficient to support lesser-included offense submitted to jury at his request).

When sentencing defendant to the maximum allowable term for intimidation of a witness, the trial court said (and we agree) that the judicial system is based upon truthfulness and an attempt to make the system fail merits substantial punishment. The court noted that the intimidation occurred more than once.[2] The court therefore sentenced defendant to the maximum allowable term. The gravity of the offense is one of the prime factors the sentencing court should consider. *McCleary,* 49 Wis. 2d at 275–76, 182 N.W.2d at 519. We reject defendant's contention that his first offender status required consideration. The gravity of his offense reduces that status to insignificance.

To support his claim that the trial court abused its discretion when sentencing him to fifteen years for second-degree murder, defendant notes that although the offense occurred after the acts constituting criminal

[2]According to the presentence report, defendant told Andy that the hunting season was coming up and that accidents happen during the season, and defendant and Tracy told Andy he could end up in the manure pit, where the men had buried a cow they had beaten.

damage and intimidation, this was his first offense, since he had never been convicted of or sentenced for any other crime at the time that the crime occurred. The "at the time" distinction is entitled to no weight. More importantly, second-degree murder is junior in heinousness only to first-degree murder. No court need consider that a person guilty of second-degree murder is a first offender.

Defendant finds abuse in the trial court's appraisal of his veracity when sentencing him for second-degree murder. We do not. The court's comments show that it disbelieved defendant's statements to the sheriff regarding the extent of his involvement in the murder. The court added, however, "Even though every word you say is the truth, Richard Scherreiks, the crime you participated in with Tracy George was an awful crime that has affected the lives of so many people and taken the life of such an innocent boy that I have to punish you severely." The court therefore put to one side its view of defendant's veracity.

Moreover, the court gave him five years' credit against the maximum sentence for second-degree murder because the court believed that the victim's body would never have been found without the information defendant volunteered to the sheriff. We add that the trial court was not required to accept defendant's version of the murder (as did the sheriff but apparently not the jury in the trial of Tracy George). Nor was the court bound by lie detector test results. *See State v. Ramey,* 121 Wis. 2d 177, 179, 359 N.W.2d 402, 404 (Ct. App. 1984) (lie detector test results inadmissible for any purpose in criminal proceedings). We conclude that the trial court did not abuse its discretion when it sentenced the defen-

dant to three-fourths of the maximum sentence for second-degree murder.

We now reach defendant's contention that the sentences amount to cruel and unusual punishment, contrary to the eighth amendment to the United States Constitution and Wis. Const. art. I, sec. 6.[3] He raises the constitutional issue in two ways. First, he raises the issue in connection with his arguments as to each sentence. Second, he contends that the court's use of victim-impact statements violated the constitutional prohibition.

Defendant does not explain why any of the individual sentences violates the constitutional prohibition. He merely asserts that this is the case. He cites *Booth v. Maryland,* 482 U.S. 496 (1987), but only in connection with his argument that use of the victim-impact statements violates the constitutional prohibition. He cites no cases pertinent to his claims that any individual sentence, as such, is unconstitutional. Simply to label a claimed error as constitutional does not make it so, *State v. Schlise,* 86 Wis. 2d 26, 29, 271 N.W.2d 619, 620 (1978), and we need not decide the validity of constitutional claims broadly stated but never specifically argued, *State v. Beno,* 99 Wis. 2d 77, 91, 298 N.W.2d 405, 413 (Ct. App. 1980).

Defendant's second contention regarding cruel and unusual punishment rests on *Booth v. Maryland, supra.* He asserts that *Booth* means it is cruel and unusual punishment to sentence him on the criminal damage and second-degree murder charges "on the basis of" two vic-

---

[3]The prohibitions of the eighth amendment apply to the states through the due process clause of the fourteenth amendment. *Booth v. Maryland,* 482 U.S. 496, 501 n. 5 (1987).

tim-impact statements.[4] The *Booth* Court concluded only that use of a victim-impact statement at the sentencing phase of a capital murder trial violates the eighth amendment prohibition against cruel and unusual punishment. 482 U.S. at 509. The *Booth* Court noted that facts about the victim and his or her family may be relevant in a noncapital criminal trial, *id.* at 507 n. 10, and said it implied "no opinion as to the use of these statements in noncapital cases," *id.* at 509 n. 12. The charges against defendant are noncapital. The court in *People v. Fountain,* 534 N.E.2d 1303, 1311–12 (Ill. App. 1989), agrees with our conclusion that *Booth* does not apply to noncapital crimes. In the absence of cited authority extending *Booth* beyond the realm of capital cases, we decline defendant's invitation to do so.[5]

At the sentencing hearing defendant objected to the court's consideration of the victim-impact statements on hearsay grounds. The objection has no merit. Victim-impact statements are part of the presentence investigation. Sec. 972.15(2m), Stats.[6] The presentence report is used at sentencing. The rules of evidence contained in

[4]The presentence investigation report contained the statements. Section 972.15(2m), Stats., provides that the "person preparing the presentence investigation report shall attempt to contact the victim to determine the economic, physical and psychological effect of the crime on the victim." The statement regarding the attempted property damage charge was prepared on the basis of an interview with the cranberry bog owner. The statement regarding the second-degree murder charge was prepared following an interview with the victim's parents.

[5]Defendant's reliance on *People v. Levitt,* 156 Cal. App. 3d 500, 516–17, 203 Cal. Rptr. 276, 287–88 (1984), is misplaced. *Levitt* does not extend *Booth. Levitt* predates *Booth* by three years.

[6]The statute interpreted in *Levitt, supra* note 5, does not

chs. 901 to 911 (other than ch. 905 with respect to privileges), Stats., do not apply to sentencing proceedings. Sec. 911.01(4)(c).

Because defendant's other objections to the trial court's use of the victim-impact statements are raised for the first time on appeal, we do not review them.

*By the Court.*—Judgments and order affirmed.

provide explicitly for the use of victim-impact statements. The statute governing *Fountain, supra,* does so provide.