**STATE of Utah, Plaintiff and Appellee,**

v.

**Joseph Robert SCIESZKA, Defendant and Appellant.**

**No. 950011–CA.**

Court of Appeals of Utah.

June 15, 1995.

LaMar J. Winward, St. George, for appellant.

Joanne C. Slotnik, Asst. Atty. Gen., and Jan Graham, State Atty. Gen., Salt Lake City, for appellee.

Before ORME, BILLINGS and JACKSON, JJ.

BILLINGS, Judge:

Joseph Robert Scieszka (defendant) appeals his forcible sodomy conviction, a first-degree felony, in violation of Utah Code Ann. § 76–5–403(2) (1995). We affirm.

### FACTS

Defendant, a thirty-five-year-old male, moved to St. George, Utah in early 1991. Shortly thereafter, he met the victim's mother at her place of business, the Inner Faith Bookstore (the bookstore). Over the next six months, defendant and the victim's mother became friends, and eventually the victim's mother rented space to defendant at the bookstore, where he conducted a series of weekly Bible study classes.

The victim was fourteen years old when she met defendant. Initially, she participated in one of his Bible study classes. In March 1992, she began preparing music for the class. That spring, defendant began helping the victim with her math, both at her home and at the bookstore. The victim stated that she and defendant became "really close" at this time and that he was her "best friend" and that she "trusted him."

In late May, at defendant's insistence, their relationship became physical. By this time, the victim's mother had become concerned about the amount of time the victim and defendant spent together. The victim's mother eventually ordered defendant to stay away from her daughter. Nevertheless, defendant phoned the victim every day at a pay telephone located at her school, telling her he was praying for her and making plans for the two of them to be together. Defendant picked the victim up in his van after school and drove her to "deserted place[s] where he knew nobody would be." The victim testified that defendant would kiss her and fondle her. She testified that at first she would say no and that "he would not like force it on me. He'd kiss me, you know, and laugh with me, and then he'd work his way on me."

Eventually, defendant progressed to removing the victim's clothing and sodomizing her. Defendant admitted at trial to performing two acts of oral sex on the victim.

The victim testified that defendant developed a plan to get her pregnant and that he told her "he figured if—if he got [her] pregnant, [her] parents couldn't break [them] apart."[1] Defendant told the victim that God had answered his prayers and that their sexual activity was all right. Defendant admitted that the victim may have looked upon him as a religious leader, and that they were "praying everyday." Defendant repeatedly acknowledged his leadership role in their relationship and, although perhaps contemplating conviction only on the lesser offense of simple sodomy, testified, "I'm totally guilty.

---

1. The victim claimed that she and defendant had sexual intercourse on three occasions; defendant denied this. At trial, defendant was acquitted of rape because penetration had not been proven beyond a reasonable doubt, as required by Utah Code Ann. § 76–5–407 (1995).

There is no excuse for what I did. It was absolutely wrong."

Defendant was ultimately convicted of forcible sodomy, a first-degree felony. On appeal, defendant challenges the trial court's conclusion that he "enticed" the victim into the sexual relationship pursuant to Utah Code Ann. § 76–5–406(11) (1995).

## ANALYSIS

### Standard of Review

 The trial court's determination of whether the facts in this case give rise to "enticement" within the meaning of section 76–5–406(11) presents a legal question. However, in reviewing this question, we grant the trial court a "measure of discretion" because of the highly fact-dependent nature of the trial court's determination. *See State v. Pena,* 869 P.2d 932, 939–40 (Utah 1994).[2]

### "Enticement" under Section 76–5–406

Defendant admitted at trial that he sodomized the victim. His only argument on appeal is that the trial court erred in determining that he enticed her into the sexual relationship, thereby finding him guilty of forcible sodomy. Defendant contends, rather, that the victim consented to the sexual relationship.

Section 76–5–403 provides:

(1) A person commits sodomy when the actor engages in any sexual act with a

person who is 14 years of age or older involving the genitals of one person and mouth or anus of another, regardless of the sex of either participant.

(2) A person commits forcible sodomy when the actor commits sodomy upon another without the other's consent.

Utah Code Ann. § 76–5–403 (1995). Section 76–5–406 provides that an act of sodomy is without the victim's consent when:

(11) the victim is 14 years of age or older, but not older than 17, and the actor is more than three years older than the victim and entices or coerces the victim to submit or participate, under circumstances not amounting to the force or threat required under subsection (2) or (4).

*Id.* § 76–5–406(11). The question of what the term entice means under section 76–5–406 is one of first impression in Utah.[3]

Defendant relies on dictionary definitions of entice, claiming they are inconsistent with his conduct. Entice has been defined as: "to lure; to lead on by exciting hope of reward or pleasure; to tempt," *Webster's New 20th Century Dictionary* (2d ed. 1960), and "[t]o wrongfully solicit, persuade, procure, allure, attract, draw by blandishment, coax or seduce.... To lure, induce, tempt, incite, or persuade a person to do a thing." *Black's Law Dictionary* 531 (6th ed. 1990). We do not find these definitions at all inconsistent with defendant's conduct. On the contrary, they accurately describe his course of conduct.

---

**2.** In *Pena,* the court noted that "while we generally consider de novo a trial court's statement of the legal rule, we often review with far less rigor the court's determination of the legal consequences of facts." 869 P.2d at 937. The court articulated three criteria useful in determining when discretion ought to be left to the trial court: (i) when the facts to which the legal rule is to be applied are so complex and varying that no rule adequately addressing the relevance of all these facts can be spelled out; (ii) when the situation to which the legal principle is to be applied is sufficiently new to the courts that appellate judges are unable to anticipate and articulate definitively what factors should be outcome determinative; and (iii) when the trial judge has observed "facts," such as a witness's appearance and demeanor, relevant to the application of the law that cannot be adequately reflected in the record available to appellate courts.

*Id.* at 938–39 (citing Maurice Rosenberg, *Judicial Discretion of the Trial Court, Viewed From Above,* 22 Syracuse L.Rev. 635, 662–63 (1971)).

**3.** In recent years, this court and the supreme court have each upheld a defendant's conviction for forcible sexual assault, finding that the defendant enticed the victim to submit to the behavior. However, in neither case was the defendant's alleged enticement an element of the crime for which the defendants were convicted. *See State v. Bishop,* 753 P.2d 439, 483 (Utah 1988) (upholding conviction for aggravated sexual abuse of child and noting that defendant's acts enticed minor victim to disrobe for an illicit photo session in exchange for new skateboard); *State v. Peters,* 796 P.2d 708, 711–12 (Utah App.1990) (upholding defendant's forcible sexual assault conviction and finding defendant enticed victim to abandoned house by pretense of showing her paintings inside).

Furthermore, a fundamental rule of statutory interpretation requires that a statute "be looked at in its entirety and in accordance with the purpose which was sought to be accomplished." *Salt Lake City v. Salt Lake County,* 568 P.2d 738, 741 (Utah 1977). Thus, the meaning of subsection (11) must harmonize with the overall purpose of the forcible sodomy statute.

■ The language of the forcible sodomy statute and its relationship to other sections of the criminal code is quite clear. The statutory section defining the charged crime, as well as the section listing the circumstances under which sodomy occurs without the victim's consent,[4] is aimed at prohibiting mature adults from preying on younger and inexperienced persons.

The Utah Supreme Court explained the legislative purpose of a similar statutory crime in *State v. Elton,* 680 P.2d 727 (Utah 1984). In *Elton,* the defendant had been charged with engaging in unlawful sexual intercourse with a girl who was under sixteen years of age and who was more than three years younger than the defendant. In part, the court described the objective of the statute as protecting young persons "from sexual exploitation by older, more experienced persons until they reach the legal age of consent and can more maturely comprehend and appreciate the consequences of their sexual acts." *Id.* at 732. Defendant's conduct certainly is the type that the statutory scheme was intended to prohibit.

In *State v. Bishop,* 753 P.2d 439 (Utah 1988), the supreme court dealt with a similar issue, concluding that the meaning of a statute making it a crime to take indecent liberties with a minor must be decided by looking at the totality of the facts and surrounding circumstances. *Id.* at 482; *accord State v. Peters,* 796 P.2d 708, 711 (Utah App.1990). The court recounted several factors which it relied upon in upholding the defendant's conviction:

> (1) the nature of the victim's participation (whether the defendant required the victim's active participation), (2) the duration of the defendant's acts, (3) the defendant's willingness to terminate his conduct at the victim's request, (4) the relationship between the victim and the defendant, and (5) the age of the victim.

*Bishop,* 753 P.2d at 482 (citing *State v. Thatcher,* 667 P.2d 23, 24 (Utah 1983) (per curiam)).

Likewise, in *State v. Deer,* 125 Wis.2d 357, 372 N.W.2d 176 (Ct.App.1985), the Wisconsin

---

4. Section 76–5–406 provides:

An act of ... sodomy, attempted sodomy, sodomy upon a child, ... is without consent of the victim under any of the following circumstances:
(1) the victim expresses lack of consent through words or conduct;
(2) the actor overcomes the victim through the actual application of physical force or violence;
(3) the actor is able to overcome the victim through concealment or the element of surprise;
(4)(a)(i) the actor coerces the victim to submit by threatening to retaliate in the immediate future against the victim or any other person, and the victim perceives at the time that the actor has the ability to execute this threat;
(a)(ii) the actor coerces the victim to submit by threatening to retaliate in the future against the victim or any other person, and the victim perceives at the time that the actor has the ability to execute this threat;
(b) as used in this subsection "to retaliate" includes but is not limited to threats of physical force, kidnapping, or extortion;
(5) The victim has not consented and the actor knows the victim is unconscious, unaware that the act is occurring, or physically unable to resist;

(6) the actor knows that as a result of mental disease or defect, the victim is at the time of the act incapable either of appraising the nature of the act or resisting it;
(7) the actor knows that the victim submits or participates because the victim erroneously believes that the actor is the victim's spouse;
(8) the actor intentionally impaired the power of the victim to appraise or control his or her conduct by administering any substance without the victim's knowledge;
(9) the victim is younger than 14 years of age;
(10) the victim is younger than 18 years of age and at the time of the offense the actor was the victim's parent, stepparent, adoptive parent, or legal guardian or occupied a position of special trust in relation to the victim as defined in Subsection 76–5–404.1(3)(h); or
(11) the victim is 14 years of age or older, but not older than 17, and the actor is more than three years older than the victim and entices or coerces the victim to submit or participate, under circumstances not amounting to the force or threat required under Subsection (2) or (4).

Utah Code Ann. § 76–5–406 (1995).

Court of Appeals used a totality of circumstances approach to consider whether a defendant had enticed a child for immoral purposes when he transported two minors across state lines to help them run away to avoid punishment. *Id.* 372 N.W.2d at 178–79. The court found that the word " 'entice' consist[s] of some acts or words intended to cause a person to do something the other person would not otherwise do." *Id.* 372 N.W.2d at 179. In upholding the defendant's conviction, the court viewed the totality of the facts and stated "[c]onsiderations of age, mental development, relationship to each other, sophistication or lack thereof and all other factors and circumstances shown by the evidence enter into a determination of whether a child was enticed." *Id.*[5]

 We conclude the trial court did not err when it found, under the totality of the circumstances, that defendant enticed the victim into a sexual relationship.[6] The victim was only fourteen to fifteen years old, and defendant was thirty-five to thirty-six years old. Defendant held himself out to be a man of God. The victim testified that during this time she and defendant were praying together every day and that they often read scriptures to one another. She stated that defendant was always referring to scripture when he spoke to her. In short, defendant used his faith and his religious position to eventually overcome the victim—who was also a

religious person and who sought the approval of God in her daily life. Moreover, defendant at all times took the lead in this relationship. Regarding her prior sexual experience, the victim testified that she was "a little kid." Under the totality of the circumstances, we cannot say the court abused its discretion in concluding that defendant enticed the victim to submit to his acts of sodomy. We therefore affirm defendant's conviction.

ORME, P.J., and JACKSON, J., concur.

---

**5.** Defendant relies on cases from other jurisdictions, such as *State v. Cook*, 139 Ariz. 406, 678 P.2d 987 (Ct.App.1984), *Bayouth v. State*, 294 P.2d 856 (Okla.Ct.App.1956), and *State v. Missmer*, 72 Wash.2d 1022, 435 P.2d 638 (1967), which have found enticement when a monetary or other reward was offered the victim. However, the language and reasoning of these cases is not inconsistent with our analysis: The offer of God's approval to a young religious girl can certainly be classified as an offer of a reward.

**6.** At trial, the court found that defendant enticed the victim to submit to his acts of sodomy within the meaning of section 76–5–406(11). In relevant part, the trial court stated:

And the Court examines the totality of the circumstances in this case and determines not whether or not [the victim] was coerced into this conduct—because there is no evidence that would support any finding of coercion—but the legislature in trying to cover and estab-

lish proscribed conduct, used the word "entice." And the word "entice" in this setting can include [defendant's] unique position in [the victim's] life. She knew him to be a teacher of younger children in the school facility that was ... somehow associated with the Christian Fellowship. She knew him to be a teacher in the Bible study group. And as he described his function in that study group, he would actually prepare and deliver a lesson as well as direct discussion.

[Defendant] was apparently known to [the victim], as well as known to others, to be familiar with the Bible. And in that setting, due to the difference in their ages, his experience was clearly an authoritative figure in her life. And it is clear to this court that [defendant] carefully, methodically, without coercion but with clear intent to practice a seduction, prayed [sic] upon the advantage and, in fact, did entice [the victim] into submitting to the conduct which involved the contact between his mouth and her genitalia.