STATE of Utah, Plaintiff and Appellee,

v.

Kip R. GIBSON, Defendant and Appellant.

No. 950093–CA.

Court of Appeals of Utah.

Dec. 7, 1995.

Kent E. Snider, Public Defender Ass'n, Inc. of Weber County, Ogden, for Appellant.

James H. Beadles, Asst. Atty. Gen., and Jan Graham, Atty. Gen., Salt Lake City, for Appellee.

Before ORME, P.J., and GREENWOOD and WILKINS, JJ.

## OPINION

GREENWOOD, Judge:

Defendant, Kip R. Gibson, appeals his convictions for rape, a first degree felony, in violation of Utah Code Ann. § 76–5–402 (1995), and forcible sexual abuse, a second degree felony, in violation of Utah Code Ann. § 76–5–404 (1995). We affirm his rape con-

viction, but reverse and remand his conviction for forcible sexual abuse.

## BACKGROUND

We recite the facts in the light most favorable to the jury's verdict. *State v. Hamilton,* 827 P.2d 232, 233–34 (Utah 1992). At the time in question, A.A. was a fourteen year-old girl who had recently moved to Salt Lake City from Brigham City. She soon became a close friend of defendant's daughter, B.C. For a period of one to two months B.C., A.A., and often defendant, spent considerable time together. During this period, A.A. made some remarks of a sexual nature about defendant to B.C., and sometimes to defendant himself.

During the period in question, defendant was living at the home of his ex-wife, B.C.'s mother. On the night of April 8, 1994, A.A. arranged to spend the night at B.C.'s home, as she had done on previous occasions. Defendant, B.C. and A.A. had planned to spend the evening watching a movie. However, since the VCR would not work, they went to bed early. B.C. pushed two twin beds together to form one large bed. Their sleeping arrangements began with B.C. in between defendant and A.A. B.C. testified that she chose this arrangement because she had some fear of what might transpire were her father and A.A. to sleep next to one another.

Later, B.C. got up to go to the bathroom. She returned to find A.A. in the spot next to her father. B.C. took A.A.'s spot and went back to sleep.

At some point defendant asked A.A. if she would like to "cuddle," to which she responded "yeah." The precise details of what transpired next were disputed. A.A. testified that defendant fondled her breasts directly and through her t-shirt, touched her vagina and inserted his finger, and penetrated her vagina once with his penis and twice with his tongue. Defendant denies that any sexual touching, other than a possible inadvertent brush of his hand, occurred. B.C. testified

that, although a light sleeper, she slept through the entire incident and was aware of nothing.

The following day A.A. told B.C. what her father had done. Approximately two weeks later the police were notified, and on May 4, 1994, the Weber County Attorney charged defendant with rape, forcible sexual abuse and forcible sodomy.

After a two-day trial, the jury found defendant guilty of rape and forcible sexual abuse, but not guilty of forcible sodomy. The trial court sentenced defendant to a term of five years to life on the rape charge, and one to fifteen years on the forcible sexual abuse charge, both sentences to be served concurrently at the Utah State Prison.

## ISSUES ON APPEAL

Defendant appeals his conviction on two grounds. First, he asserts that the trial court erred when it failed to properly instruct the jury on all the elements of forcible sexual abuse. Second, he contends that the evidence was insufficient to support the jury's verdict of rape.[1]

## STANDARDS OF REVIEW

This court reviews the trial court's jury instructions on elements of a crime under a correctness standard. *State v. Stevenson,* 884 P.2d 1287, 1290 (Utah App.1994), *cert. denied,* 892 P.2d 13 (Utah 1995). However, jury instructions to which a party failed to object at trial will not be reviewed absent a showing of manifest injustice. Utah R.Crim.P. 19(c); *State v. Perdue,* 813 P.2d 1201, 1203 (Utah App.1991) *aff'd,* 900 P.2d 1093 (Utah 1995). Failure to give an elements instruction for a crime satisfies the manifest injustice standard under Rule 19(c) and constitutes reversible error as a matter of law. *State v. Jones,* 823 P.2d 1059, 1061 (Utah 1991).

---

**1.** Defendant also alleges ineffective assistance of counsel. However, we have reviewed that claim and found it to be without merit; accordingly, we decline to examine it further. *State v. Carter,* 776 P.2d 886, 888 (Utah 1989) *cert. denied,* ——

U.S. ——, 116 S.Ct. 163, 133 L.Ed.2d 105 (1995) (stating appellate courts "need not analyze and address in writing each and every argument, issue, or claim raised").

When examining the sufficiency of the evidence in a criminal jury trial, we begin with the threshold issue of statutory interpretation, which we decide as a matter of law. *State v. Souza*, 846 P.2d 1313, 1316–17 (Utah App.1993). With regard to the facts, "we review the evidence and all inferences which may reasonably be drawn from it in the light most favorable to the verdict of the jury." *State v. Johnson*, 821 P.2d 1150, 1156 (Utah 1992) (citations omitted). Under this standard, we will reverse a conviction only when the evidence, viewed in light of our interpretation of the statute, "is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he [or she] was convicted." *Id.*

## ANALYSIS

### I. Jury Instruction

Defendant challenges the trial court's jury instruction on the elements of forcible sexual abuse. Specifically, he objects to the fact that the jury was not instructed that lack of consent is a necessary element of the crime of forcible sexual abuse. The State concedes that this omission constitutes reversible error. Having reviewed the record and the applicable case law, we agree. *See Jones*, 823 P.2d at 1061; *State v. Laine*, 618 P.2d 33, 35 (Utah 1980). Accordingly, we reverse defendant's conviction on the charge of forcible sexual abuse and remand for a new trial on that charge.

### II. Sufficiency of the Evidence

Defendant claims that the State's evidence was insufficient to allow the jury to find him guilty of rape beyond a reasonable doubt. His primary contention on appeal is that a reasonable jury would have had a reasonable doubt as to whether or not his sexual relations with A.A. were consensual. We disagree.

2. Children under fourteen are granted absolute protection from sexual exploitation. Sexual contact with children under fourteen is a crime of strict liability, meaning that any sexual contact

The primary flaw in defendant's argument flows from his theory of consent. While his theory may apply to consensual sexual intercourse between adults, it is not a correct statement of the law with respect to sexual relations between a thirty-two year-old man and a fourteen year-old girl. Consensual sexual relations can, and do, occur between adults and juveniles, and may be legal in certain limited circumstances; however, the legislature has recognized the need to protect youths from improper sexual exploitation by adults.

The Utah Legislature has specifically addressed this concern by a statute that provides juveniles older than fourteen but younger than eighteen with special protection against improper sexual coercion by adults.[2] The statute provides, in relevant part:

> An act of sexual intercourse, rape, attempted rape, rape of a child, attempted rape of a child, ..., sodomy, attempted sodomy, sodomy upon a child, attempted sodomy upon a child, forcible sexual abuse, attempted forcible sexual abuse, sexual abuse of a child, attempted sexual abuse of a child, or simple sexual abuse is *without consent of the victim* under any of the following circumstances:
>
> ...;
>
> (11) the victim is *14 years of age or older, but not older than 17, and the actor is more than three years older than the victim and entices or coerces* the victim to submit or participate, under circumstances not amounting to the force or threat required under Subsection (2) or (4).

Utah Code Ann. § 76–5–406 (1995) (emphasis added). According to subsection (11), sexual contact between an adult and a teenager between the ages of fourteen and seventeen is considered to be *legally* without consent if the actor is more than three years older than the victim and "entices" or "coerces" the victim, even if the victim otherwise apparently consents. Since it is undisputed that A.A. was fourteen and defendant was thirty-two at the time in question, the relevant inquiry in

with children under fourteen, whether consensual or not, is a felony. Utah Code Ann. § 76–5–406(9) (1995).

this case is whether or not the jury could have reasonably concluded that defendant "coerced" or "enticed" A.A. into submitting to sexual intercourse with him.

### A. "Enticement" under Section 76–5–406(11)

This court recently discussed the meaning of "enticement" under subsection (11). *State v. Scieszka*, 897 P.2d 1224 (Utah App.1995). In *Scieszka*, the defendant was a religious leader who used his position of authority to manipulate a fourteen year-old girl into allowing him to sexually molest her. *Id.* at 1225–26. While the facts of the present case do not present such a calculated course of seduction as in *Scieszka*, we believe that the term "entice," as used in subsection (11), includes defendant's conduct in this case.

When interpreting part of a statute, it should be construed in light of the purpose of the statute as a whole. *Id.* at 1227. In *Scieszka*, this court noted that the purpose of subsection (11), in combination with the statutory section defining the crime, is to prevent "mature adults from preying on younger and inexperienced persons." *Id.* Read in this light, the specific intent of subsection (11) is to create a legal definition of consent for teenagers which is different from the more lenient consent required between adults.

■ Black's Law Dictionary defines "entice" as "to wrongfully solicit, persuade, procure, allure, attract, draw by blandishment, coax or seduce. To lure, induce, tempt, incite, or persuade a person to do a thing." *Black's Law Dictionary* 531 (6th ed. 1990). This definition is consistent with the statutory purpose in that it describes the use of *improper* psychological manipulation to influ-

ence the will of another. In other words, the "enticement" of a teenager by an adult occurs when the adult uses psychological manipulation to instill improper sexual desires which would not otherwise have occurred.[3]

### B. Evidence of Defendant's Conduct

■ The final question to be addressed is whether there was sufficient evidence on the record in this case to support a finding that defendant "enticed" A.A. In deciding the question of whether or not defendant's conduct constituted enticement, we look at the totality of the facts and circumstances. *Scieszka*, 897 P.2d at 1227–28; *accord State v. Peters*, 796 P.2d 708, 711 (Utah App.1990). Relevant factors in this inquiry include:

"(1) the nature of the victim's participation (whether the defendant required the victim's active participation), (2) the duration of the defendant's acts, (3) the defendant's willingness to terminate his conduct at the victim's request, (4) the relationship between the victim and the defendant, and (5) the age of the victim."

*Scieszka*, 897 P.2d at 1227 (quoting *State v. Bishop*, 753 P.2d 439, 482 (Utah 1988) (citation omitted) (where crime charged was taking indecent liberties with a minor)).

On the record before us, we find ample evidence to support the jury's finding that defendant's sexual contact with A.A. was legally non-consensual. Viewed in a light most favorable to the jury's findings, the record attests to a course of conduct on the part of defendant which is easily characterized as the unlawful seduction of a teenager by an adult.

During the period in question, defendant spent considerable time with A.A. He be-

---

**3.** Other courts have defined "entice" similarly. The Wisconsin Court of Appeals defined entice in reference to a statute which makes it illegal to entice a young girl to leave her parents' home:

"[P]ersuade" and "entice" consist of some acts or words intended to cause a person to do something the other person would not otherwise do. Considerations of age, mental development, relationship to each other, sophistication or lack thereof and all other facts and circumstances shown by the evidence enter into a determination of whether a child was enticed.

*State v. Deer*, 125 Wis.2d 357, 372 N.W.2d 176, 179 (Ct.App.1985). The South Dakota Supreme Court stated that for purposes of criminal statutes generally:

"[E]ntice" is not a word referring to approved conduct. It may mean seduce. It is synonymous to lure, trap, or snare. To entice as used in penal statutes may mean to inveigle, decoy, tempt, delude, to persuade against one's will or better judgment, or to draw into a situation by ruse or wiles.

*Kelley v. Duling Enters., Inc.*, 84 S.D. 427, 172 N.W.2d 727, 730 (1969).

friended her and bought her presents. When A.A. made improper sexual statements about defendant, he made no objections nor did he attempt to correct her. Neither did defendant object when A.A. openly referred to herself as his girlfriend. In this manner, he led A.A. to believe that a romantic relationship was blossoming between them. As the supreme court noted in *Bishop*, "[t]he relationship between a young child victim and defendant is particularly significant since the closer that relationship is, the more influence the defendant can exert over the victim." 753 P.2d at 482.

Finally, having coaxed A.A. into a proper frame of mind, he slowly and deliberately initiated sexual contact. He began with casual touching and escalated this touching to full-blown sexual contact. The jury could, therefore, have easily concluded, that on account of their close relationship and the great difference between their ages, defendant had little trouble seducing his victim.

Viewed in this light and examined under the totality of the circumstances, defendant's course of conduct can be said to have exploited the naive sexual awakenings of a teenage girl for his own improper sexual gratification. This is precisely the type of conduct proscribed by subsection (11).

Defendant argues that if A.A. did not consent, she should have affirmatively demonstrated her lack of consent to him. He argues further that she could have, at the very least, easily awakened B.C. if she had truly objected to defendant's actions. We find this argument unpersuasive. Adopting defendant's interpretation would place a great burden squarely on the victim's shoulders, whereas the legislature intended the opposite result. In fact, it is precisely because young teenagers have difficulty protesting the wrongful sexual attentions of adults that they need the special protections of section 76–5–406(11). This statute says "no" for A.A., and others like her, when they are wrongfully placed in situations where they cannot be expected to do so for themselves.

Therefore, we conclude that the record supports a finding that defendant "enticed" A.A., within the meaning of subsection (11).[4] This determination supports the conclusion that defendant's sexual contact with A.A. was legally non-consensual. Accordingly, we affirm defendant's conviction on the charge of rape.

## CONCLUSION

The trial court committed reversible error when it failed to instruct the jury that lack of consent is a necessary element of a charge of forcible sexual abuse. Since the jury was not properly instructed, defendant's conviction on the charge of forcible sexual abuse must be reversed. With respect to the sufficiency of the evidence to support defendant's conviction on the charge of rape, we find that the record supports the jury's verdict, and accordingly, we affirm defendant's conviction on the charge of rape.

Affirmed in part, reversed and remanded in part.

WILKINS, J., concurs.

ORME, Presiding Judge (concurring):

I concur in the court's opinion. I write separately to emphasize that our decision today goes well beyond the approach taken in *State v. Scieszka*, 897 P.2d 1224 (Utah App.1995). In that case, we seemed to assume that "entice," as used in the statute, required a pattern of ongoing, systematic, purposeful conduct with at least an implicit offer of some kind of reward. *Id.* at 1228. In the instant case we have, in essence, equated the word entice, as used in the statute, to include any situation in which the adult participant takes the lead in bringing about the sexual encounter complained of; we have basically equated "entices" and "seduces." [1]

---

4. We do not necessarily agree with our colleague's concurring opinion, speculating about the future impact of our opinion. Future cases will determine that impact. We also note that the jury was not instructed on the definition of "entice" and that no such instruction was requested. Presumably, the jury believed defendant's conduct fell within their understanding of the word's meaning.

1. Stated the other way, about the only circumstance in which an adult more than three years older than a child under 18 (but older than 14)

I see no problem with taking this new interpretative tack. Indeed, it better comports with the settled definition of "entice" as meaning only "incite" or "instigate," "to draw into evil ways ... lead astray," or "tempt." *Webster's Third New International Dictionary* 757 (1986). However, I think it will promote uniformity in enforcement and in instructing juries to make explicit the interpretation we employ, because some portions of the main opinion, taken in isolation, are reminiscent of the more restrictive view employed in *Scieszka*.[2] For example, the main opinion points out that defendant bought A.A. gifts, that A.A. made improper sexual statements about defendant to which he did not object, and that defendant did not object when A.A. characterized herself as his girlfriend.

However, while A.A., his daughter's best friend, often accompanied defendant and his daughter while shopping, visiting friends, or going out to eat, there is only one instance when he actually purchased A.A. something more substantial than a soft drink. At the same time he bought his daughter a bathing suit at a discount store, he also purchased a suit for A.A.[3] A.A. did make inappropriate sexual remarks to defendant on a couple of occasions—which seems more akin to A.A. enticing defendant rather than vice versa. Although defendant did not necessarily openly object to these improper statements, neither does the record indicate he did anything to encourage them. In fact, defendant testified that A.A.'s behavior in that regard embarrassed him. A.A. herself admitted that

when asked if she and defendant were a couple, both said, "Yes," but were "just joking around."

When the smoke clears in this case, all we really have is an adult who instigates a sexual encounter with a teenage visitor, without force or cajoling on his part or resistance or protest on her part. If she were older than seventeen, we would regard the encounter as consensual. Because she was only fourteen, she is deemed not to have consented if defendant enticed her. Defendant enticed her simply because he was the instigator. Nothing more is required under the statute.

Given what I believe the Legislature's purpose to be, as explained in the main opinion, I have no difficulty with this interpretation, although there will be some who think we have gone too far in aiding the Legislature's protection of this class of teenagers from sexual exploitation by adults. Of course, if we have gone further than the Legislature intended, it will be an easy enough matter for the Legislature to revise the statute to better accord with its intent, although it is hard to imagine the Legislature would wish to make it more difficult to prosecute adults who sexually exploit teenage children.

could conceivably have sexual relations with that child and escape the reach of § 76–5–406(11) would be in situations in which the *child* took the lead in instigating the encounter, i.e., when the adult is seduced.

2. In so stating, I do not criticize that opinion, in which I concurred. The facts in that case were simply so egregious that it was unnecessary to test the outer limit of the term "entice," as we must do in the instant case.

3. As an isolated occurrence, this incident seems more a matter of social courtesy than as indicative of a course of predatory conduct. Moreover, it is unclear whether defendant bought the suit for A.A. before or after the night in question, as the testimony of A.A. and that of defendant's daughter conflict on this point.