*This opinion is subject to revision before final publication in the Pacific Reporter*

**2013 UT 17**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Plaintiff and Appellant,*

*v.*

ANDREA BILLINGSLEY,
*Defendant and Appellee.*

No. 20110148
Filed March 15, 2013

Third District, West Jordan
The Honorable Robert W. Adkins
No. 091402730

Attorneys:

John E. Swallow, Att'y Gen., Marian Decker, Asst. Att'y Gen., Salt Lake City, for appellant

Dean N. Zabriskie, Rhome Zabriskie, Stephen R. Allred, Provo, for appellee

ASSOCIATE CHIEF JUSTICE NEHRING authored the opinion of the Court, in which JUSTICE DURHAM and JUSTICE PARRISH joined.

JUSTICE LEE filed a concurring opinion, in which CHIEF JUSTICE DURRANT joined.

ASSOCIATE CHIEF JUSTICE NEHRING, opinion of the Court:

## INTRODUCTION

¶1   A jury convicted Andrea Billingsley of one count of rape, three counts of forcible sodomy, and three counts of forcible sexual abuse.  The trial judge arrested the judgment and granted a new trial on all counts based on evidentiary errors and several "irregularities" that occurred during trial.  The State appealed, and sought to reinstate Ms. Billingsley's convictions.  We hold that the evidentiary ruling excluding evidence of the victim's sexual predisposition was proper and the other claimed errors and irregularities do not require reversal because they did not prejudice Ms. Billingsley.  We

therefore reverse the order granting a new trial and reinstate Ms. Billingsley's convictions.

## BACKGROUND

¶2    Ms. Billingsley, who was in her early thirties during the time of the incidents involved in this case, worked as an in-school suspension (ISS) aide at West Jordan Middle School.  As an ISS aide, Ms. Billingsley was responsible for managing the ISS classroom.  ISS aides do not teach academic subjects, but they have authority over the students in ISS.  M.M., a fifteen-year-old student at the school, was assigned to Ms. Billingsley's classroom for suspension during lunch.  There was only one other student in the classroom that day, who explained that although he slept through the period, he did notice M.M. and Ms. Billingsley talking together in a "flirtatious" manner. M.M. testified at trial that during detention, Ms. Billingsley put a cell phone on his desk displaying a photo of her uncovered breasts.  Then, still in the classroom, she rubbed his chest and leg, put her hand in his pants, rubbed his penis, and performed oral sex.

¶3    According to M.M.'s testimony, the following summer, when he was no longer a student at West Jordan Middle School, he called Ms. Billingsley from his friend D.P.'s cell phone.  D.P. was also fifteen years old.  Ms. Billingsley asked M.M. if he and his friend wanted to "hang out" and he said "sure."  Both boys walked to West Jordan Middle School to meet with Ms. Billingsley.  Ms. Billingsley sent topless photos of herself to D.P.'s cell phone.  After meeting M.M. and D.P., Ms. Billingsley drove them to the park.  She suggested that they all get in the back seat.  M.M. and D.P. testified that she touched both boys' penises, performed oral sex on D.P., and had sexual intercourse with M.M.

¶4    Ms. Billingsley was charged with one count of rape, three counts of forcible sodomy, and three counts of forcible sexual abuse. For each count, the State was required to prove that the boys did not consent to the sexual activity.  Under Utah law, a defendant acts without consent of the victim under two relevant circumstances: "the victim is younger than 18 years of age and at the time of the offense the actor . . . occupied a position of special trust in relation to the victim,"[1] or "the victim is 14 years of age or older, but younger

---

[1] UTAH CODE § 76-5-406(10).  "Position of special trust" is defined as "that position occupied by a person in a position of authority,

(continued...)

than 18 years of age, and the actor is more than three years older than the victim and entices or coerces the victim to submit or participate."[2]

¶5   Ms. Billingsley pleaded not guilty and testified at trial that no inappropriate touching or sexual activity occurred. In addition to the testimony of M.M. and D.P., evidence at trial included a recorded conversation between M.M. and Ms. Billingsley after the investigation had begun in which she told M.M. she wondered "who alerted [the police]"; a conversation from jail between Ms. Billingsley and her husband in which she said, "I'm guilty"; the testimony of another student to whom Ms. Billingsley admitted she had sex with M.M.; and DNA analysis linking seminal fluid in the backseat of Ms. Billingsley's car to D.P.

¶6   The jury found Ms. Billingsley guilty on all counts. Ms. Billingsley moved for a new trial on the ground that a topless photo from her cell phone was improperly admitted into evidence. The trial court granted a new trial, basing the decision on several errors. First, the judge decided that the cell phone photo was improperly admitted under Utah Rule of Evidence 403. The judge explained that "the photograph alone was not prejudicial enough to warrant an arrest of judgment," but the photograph "contributed to the unconstitutionality of [Ms. Billingsley's] trial due to the cumulative errors." The "other irregularities during trial that," taken together, "resulted in a violation of [Ms. Billingsley's] constitutional right to a fair trial" were several references to Ms. Billingsley using the word "teacher" instead of "aide," the State's comment thanking a witness for his truthfulness after he admitted to sleeping through ISS, and the "flamboyant" head-shaking of a State employee during Ms. Billingsley's testimony.

¶7   The trial judge also revisited an order excluding testimony from a teacher at West Jordan Middle School. The teacher would have testified that M.M. made "inappropriate sexual advances" toward her. The trial court determined that it should have "allow[ed] at least a limited inquiry into [the victims'] prior sexual

---

[1] (...continued)
who, by reason of that position is able to exercise undue influence over the victim, and includes, but is not limited to, a . . . teacher." *Id.* § 76-5-404.1(4)(h).

[2] *Id.* § 76-5-406(11).

knowledge and/or experience, and/or behavior, and . . . allow[ed] Defendant rebuttal witnesses regarding the victims' prior sexual knowledge, experience, and/or behavior." The trial court determined that, although generally inadmissible under Utah Rule of Evidence 412,[3] exclusion of this evidence violated Ms. Billingsley's right to confront witnesses against her and justified arresting the jury verdict.[4] Furthermore, the court determined that excluding this evidence denied Ms. Billingsley a fair trial by effectively lowering the burden of proof because, absent inquiry into "the victims' prior sexual behavior and/or predisposition . . . the State was relieved of its duty to show that Defendant psychologically manipulated the victims to instill improper sexual desires that would not have otherwise occurred." Psychologically manipulative conduct was impliedly understood by the trial court to be essential to satisfy that a defendant "entice" a victim to engage in proscribed sexual conduct pursuant to Utah Code section 76-5-406(11).

¶8 The State timely appealed. We have jurisdiction under Utah Code sections 78A-3-102(3)(b), 78A-3-102(5), and 77-18a-1(3)(f).

## STANDARD OF REVIEW

¶9 We review a trial court's ruling on a motion for a new trial under an abuse of discretion standard.[5] "At the same time, however, we review the legal standards applied by the trial court . . . for correctness . . . [and] the trial court's factual findings for clear error."[6]

---

[3] The rule prohibits the admission of "evidence offered to prove that a victim engaged in other sexual behavior; or evidence offered to prove a victim's sexual predisposition." UTAH R. EVID. 412(a)(1)-(2).

[4] *See id.* 412(b)(3) (providing an exception for "evidence whose exclusion would violate the defendant's constitutional rights").

[5] *See State v. Pinder*, 2005 UT 15, ¶ 20, 114 P.3d 551; *State v. Bundy*, 589 P.2d 760, 761 (Utah 1978) ("The matter of granting or refusing to grant a new trial lies within the sound discretion of the trial judge and we will reverse his decision thereon only where he has abused that discretion.").

[6] *Pinder*, 2005 UT 15, ¶ 20 (internal quotation marks omitted).

## ANALYSIS

### I. THE TRIAL COURT'S PRETRIAL RULING EXCLUDING EVIDENCE UNDER UTAH RULE OF EVIDENCE 412 WAS CORRECT AND THE TRIAL COURT ABUSED ITS DISCRETION BY GRANTING A NEW TRIAL

¶10 Initially, the trial court ruled that the testimony of a teacher regarding a prior, unrelated incident involving M.M. was inadmissible under rule 412 of the Utah Rules of Evidence and that none of the exceptions to that rule applied. In granting a new trial, the court reconsidered this decision. We hold that the trial court correctly excluded the evidence and that the fate of the excluded evidence could not justify arresting the verdict.

### A. Excluding the Evidence Did not Violate Ms. Billingsley's Right to Due Process

¶11 Because at the time of the incident in Ms. Billingsley's car she no longer occupied a position of special trust, the State relied on Utah Code section 76-5-406(11) to establish Ms. Billingsley's culpability. This provision mandates that consent is absent when the victim is between the ages of fourteen and eighteen and the defendant "entices or coerces the victim to submit or participate." Ms. Billingsley now argues that "[i]f the alleged victims were predisposed to engage in the sexual activity, they could not have been enticed as a matter of law."

¶12 Ms. Billingsley relies on two decisions from the Utah Court of Appeals for this proposition. *State v. Gibson* concerned a fourteen-year-old victim who was a friend of Mr. Gibson's daughter.[7] On a night when Mr. Gibson, his daughter, and the victim were all sleeping in the same bed, Mr. Gibson asked the victim if she would like to "cuddle," and when she responded, "yeah," Mr. Gibson had sexual intercourse with her.[8] A jury convicted Mr. Gibson of rape under a theory of enticement. He argued on appeal that any reasonable juror "would have had a reasonable doubt as to whether or not his sexual relations with [the victim] were consensual" under the statutory definition.[9] In addition to quoting the *Black's Law*

---

[7] 908 P.2d 352, 354 (Utah Ct. App. 1995).

[8] *Id.*

[9] *Id.* at 355.

*Dictionary* definition of "entice,"[10] *Gibson* includes language that Ms. Billingsley contends renders evidence of a teenage victim's sexual predisposition necessary to the determination of guilt. *Gibson* states, "In other words, the 'enticement' of a teenager by an adult occurs when the adult uses psychological manipulation to instill improper sexual desires which would not otherwise have occurred."[11]  The court also noted that "under the totality of the circumstances, [Mr. Gibson's] course of conduct can be said to have exploited the naïve sexual awakenings of a teenage girl for his own improper sexual gratification."[12]  Seizing this language, Ms. Billingsley argues that because the victim in *Gibson* was naïve and the court of appeals held that she was enticed "under the totality of the circumstances" when the defendant "exploited" her "naïve sexual awakenings . . . for his own improper sexual gratification,"[13] the State in this case was required to "meet its burden by showing that the alleged victims [M.M. and D.P.] were sexually naïve and not sexually predisposed."  We are not persuaded.

¶13  Under no plausible definition of "entice" are a teenager's unrelated sexual comments to third parties  an element of the offense and thus admissible under the exception to rule 412 for "evidence whose exclusion would violate the defendant's constitutional rights."[14]  A contrary result is not supported by the plain language of the statute, which requires only that the defendant "entice" the victim. *Black's Law Dictionary* defines "entice" as "[t]o lure or induce; esp., to wrongfully solicit (a person) to do something."[15] *Webster's Third New International Dictionary* defines

---

[10] *Id.* at 356 ("Black's Law Dictionary defines 'entice' as 'to wrongfully solicit, persuade, procure, allure, attract, draw by blandishment, coax or seduce. To lure, induce, tempt, incite, or persuade a person to do a thing.'" (citing *Black's Law Dictionary* 531 (6th ed. 1990))).

[11] *Id.*

[12] *Id.* at 357.

[13] *Id.*

[14] UTAH R. EVID. 412(b)(3).

[15] BLACK'S LAW DICTIONARY 611 (9th ed. 2009).

it as "to draw on by arousing hope or desire."[16]  These definitions suggest that inquiry under the statute should focus on the defendant's conduct, not the victim's sexual experience.  We need not decide whether we endorse the concurrence to *Gibson*.  The State argues that the concurrence was clear in its rationale  that "Defendant enticed [the victim] simply because he was the instigator.  Nothing more is required under the statute."[17]  Neither party challenges the jury instructions in this case, which stated that "the 'enticement' of a teenager by an adult occurs when the adult uses psychological manipulation to instill improper sexual desires which would not otherwise have occurred" and

> [e]nticement consists of words intended to cause a person to do something that person would not otherwise do.  Factors one may consider are whether the defendant wrongfully solicited, persuaded, procured, allured, attracted, drew by blandishment, coaxed, or otherwise seduced, and did so to lure, induce, tempt, incite, or persuade a person to do a thing, or to beguile by arousing hope or desire.

Whether the jury instructions properly defined "enticement" under the statute is a question we have not been asked to answer in this appeal.[18]  We hold that under no definition, including the one provided in the jury instructions, would the evidence of M.M.'s unrelated comment to a teacher be necessary to the determination of guilt and thus admissible under rule 412.[19]

---

[16] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 757 (1961).

[17] *Gibson*, 908 P.2d at 358 (Orme, J., concurring).

[18] The parties stipulated to the jury instructions that defined "enticement."  We therefore do not analyze their legal sufficiency here.  We note, however, that the instructions, by requiring that words of enticement cause a person to do something that he would not, absent the enticement, do, seem to go too far towards inviting a defendant to explore and expose a victim's sexual history as a way to undercut a contention that the sexual conduct in which he engaged with the defendant was conduct he would not otherwise engage in.

[19] Ms. Billingsley argues in a footnote that if "the State is not

(continued...)

¶14 The suggestion that once a teenager has engaged in other sexual activity, he cannot be enticed defies the language and the logic of the statute. Requiring the State to prove that the victim was not predisposed to engage in sexual activity of any kind would defeat the purpose of the statute, requiring an inquiry into the sexual history of teenage victims and encouraging an accused offender to attack a victim for being "predisposed" to sexual advances regardless of how egregious the defendant's conduct was. The fact that two previous Utah cases involved victims who were sexually inexperienced does not make the victim's sexual naiveté an element of the crime.[20] *Gibson* rejected the argument that a teenage victim should be required to affirmatively demonstrate her lack of consent, noting that "it is precisely because young teenagers have difficulty protesting the wrongful sexual attentions of adults that they need the special protections of section 76–5–406(11)."[21] And it is precisely because evidence of a victim's other sexual behavior and sexual predisposition lacks relevance and has "an unusual propensity to

---

[19] (...continued)
required to show that juvenile victims are naïve or not sexually predisposed, [the enticement statute] could arguably be stricken as void [because] . . . the language of the statu[t]e and the case law interpreting the same would be contradicted and it would be impossible to know what practices are prohibited under the statute." To the extent this argument is properly briefed, we find it unpersuasive. We hold that under no definition of "entice" would the 412 evidence in this case be admissible.

[20] *State v. Scieszka*, 897 P.2d 1224 (Utah Ct. App. 1995) was issued the same year as *Gibson*. In *Scieszka*, the court of appeals noted that the forcible sodomy statute "is aimed at prohibiting mature adults from preying on younger and inexperienced persons." *Id.* at 1227. The court of appeals examined the totality of the circumstances to conclude that the conduct of the defendant in that case, who was thirty-five, used his religious position, took the lead in the relationship, and exploited a girl who was sexually inexperienced, clearly fit under the definition of "entice." *Id.* at 1228.

[21] *Gibson*, 908 P.2d at 357.

unfairly prejudice, inflame, or mislead the jury" that rule 412 bars its admission.[22]

¶15 Absent a definition of "entice" that requires the State to prove that the victim was not predisposed to engage in *any* sexual activity, a definition we reject, Ms. Billingsley's Due Process Clause argument is not persuasive. The jury in this case determined that Ms. Billingsley enticed the two minors based on her conduct towards them. The exclusion of the rule 412 evidence did not violate the Due Process Clause by lowering the State's burden of proof. The State was required to prove beyond a reasonable doubt that Ms. Billingsley enticed the teenage victims, not that the victims were sexually inexperienced.

### B. Excluding the Evidence Did not Violate Ms. Billingsley's Right to Confront Witnesses Against Her

¶16 Ms. Billingsley also argues that depriving her of "the opportunity to cross-examine the alleged victims on their prior sexual knowledge, experience, or behavior," and depriving her of the opportunity "to provide rebuttal witnesses regarding the same, made it impossible for [Ms. Billingsley] to show her defense that the alleged victims did something with her that they otherwise would have done regardless of the allegations that she enticed them to do so."

¶17 As we explained above, a minor's sexual inexperience is not an element of the offense.[23] Ms. Billingsley was permitted to present evidence and argue both that the minors had not been enticed because they were predisposed to "improper sexual desires" *connected to Ms. Billingsley*[24] and that M.M. in particular was not enticed to do something that he "would not otherwise do" because he was a "walking hormone . . . up for everything." The Sixth

---

[22] *State v. Dibello*, 780 P.2d 1221, 1229 (Utah 1989); *see* UTAH R. EVID. 412 advisory committee's note.

[23] The probative value of the rule 412 evidence was especially low in this case, where Ms. Billingsley's defense was not that the minors initiated the sexual conduct or that her advances did not amount to enticement, but that the minors fabricated their accounts of the sexual conduct.

[24] Ms. Billingsley testified that M.M. made inappropriate comments to other students about her breasts.

Amendment right to "be confronted with the witnesses against [an accused]" does not sweep before it all rules of evidence. Utah Rule of Evidence 412 coexists harmoniously with the Confrontation Clause. Evidentiary rules that "serve[] legitimate state interests . . . may . . . justify even the severe sanction of preclusion" because "[t]he Sixth Amendment does not confer the right to present testimony free from the legitimate demands of the adversarial system."[25] In the context of sexual conduct, a state's interest in prohibiting inquiry into a victim's sexual history "is not in variance with the purpose of the [C]onfrontation [C]lause to advance the accuracy of the truth determining process."[26] The trial court abused its discretion when it determined that Ms. Billingsley's right to confront witnesses against her was violated.

## II. THE ERRORS AND IRREGULARITIES THE TRIAL COURT CITED WERE HARMLESS

¶18 The trial court determined that several other errors and irregularities that occurred at trial, while each "alone was not prejudicial enough to warrant an arrest of judgment," contributed to cumulative error and "deprived [Ms. Billingsley] of her constitutional right to a fair trial." The trial court cited four such errors and irregularities.

¶19 First, the State referred to Ms. Billingsley during trial as a teacher instead of an aide. The State points out on appeal that defense counsel was the first to refer to Ms. Billingsley as a teacher. And it is uncontested that, whatever her job title, Ms. Billingsley held a position of special trust.[27] Second, the prosecutor said,

---

[25] *Michigan v. Lucas*, 500 U.S. 145, 152–53 (1991) (internal quotation marks omitted).

[26] *Rozell v. Estelle*, 554 F.2d 229, 230–31 (5th Cir. 1977) (per curium) (internal quotation marks omitted).

[27] Utah Code section 76-5-406(10) explains that consent is absent if "the victim is younger than 18 years of age and at the time of the offense the actor . . . occupied a position of special trust in relation to the victim. . . ." Utah Code section 76-5-404.1(4)(h) defines special trust as "that position occupied by a person in a position of authority, who, by reason of that position is able to exercise undue influence over the victim, and includes, but is not limited to, a . . .

(continued...)

"thanks for your honesty" after a student's statement that he slept through the ISS period elicited laughter. During the new trial hearing, the prosecutor made the following statement for the record:

> The time when the [c]ourt asked . . . [c]ounsel to approach and . . . told us that was inappropriate, that was in response to [the witness] testifying . . . I sleep a lot in I.S.S., to which there were several chuckles, from the gallery as well as the jury and I said the words, Oh well, we thank you for your honesty and that was the occasion upon which the [c]ourt asked us to approach the bench and made note of that.

¶20   Third, the trial court "observed that there was a woman in the court room gallery emphatically shaking her head from side to side" during Ms. Billingsley's testimony. The trial judge conducted a conference with counsel and inquired about the woman, who was employed by the State. The woman left the courtroom after the prosecutor spoke with her.

¶21   "[T]rial court errors will require reversal only if [our] confidence in the jury's verdict is undermined."[28] Defense counsel did not object or complain of any of these irregularities at trial. Nor did Ms. Billingsley raise them in her motion for a new trial. Defense counsel had good reason for ignoring these irregularities. They are clearly innocuous. The possibility that they had any influence on the jury's verdict is remote.

¶22   The only issue the trial court cited that could conceivably have impacted a juror is the admission into evidence of a topless photo of Ms. Billingsley. The photo was taken from Ms. Billingsley's cell phone and enlarged to fit an 8½ x 11 inch sheet of paper. However, the photo was not one Ms. Billingsley had shown to the victims. It was placed on the phone after the charged conduct. In its order arresting judgment and granting a new trial, the court determined that the picture should have been excluded under rule 403 of the Utah Rules of Evidence because it had limited probative

---

[27] (...continued)
teacher."

[28] *Wilson v. IHC Hospitals, Inc.*, 2012 UT 43, ¶ 24, 289 P.3d 369 (second alteration in original) (internal quotation marks omitted).

value[29] and was unduly prejudicial. According to the trial court, "[f]or the jury to decide whether the photograph would have enticed the victims the photograph should have, at the very least, been the size of what the victims[] would have seen." As with the other errors and irregularities, the court acknowledged that "the photograph alone was not prejudicial enough to warrant an arrest of judgment." We agree. It is highly unlikely that the enlargement of the photo impacted the jury's deliberations. Our confidence in the verdict, which was supported by the victims' testimony, Ms. Billingsley's admissions, and DNA evidence, is not undermined by the publication of a photo the jury knew was taken subsequent to the charged conduct. In sum, the possibility that any of the alleged errors impacted the verdict is so remote that it was an abuse of discretion to arrest the judgment and grant a new trial based on cumulative error.

## CONCLUSION

¶23 The trial court abused its discretion when it arrested judgment and granted a new trial. The exclusion of evidence under rule 412 was proper and the errors and irregularities that formed the basis for the trial court's order granting a new trial were harmless. We therefore vacate the order granting a new trial and reinstate the jury verdict.

JUSTICE LEE, concurring in part and concurring in the judgment:

¶24 I concur in the court's disposition of this case but disagree with its decision to reach out to address an issue that is both foreclosed by the posture of this appeal and unnecessary to the judgment. Specifically, I see no basis for opining, as the court does in paragraphs 11–15, on whether consideration of a victim's sexual predisposition is "necessary to the determination of guilt" under Utah Code section 76-5-406(11) or "defies the language and the logic of" that provision. *Supra* ¶¶ 13, 14.

¶25 The parties' failure to challenge the jury instructions in this case prevents us from reaching that question. Those instructions arguably made evidence of a victim's sexual predisposition

---

[29] The trial court determined that the photo was "relevant to support the victims['] testimony that Defendant had shown a nude photograph of herself on her cellular phone to M.M. and later sent a nude photograph of herself to D.P.'s cellular phone."

pertinent to the issue of enticement. *Supra* ¶ 13 (quoting the jury instruction's definition of enticement as "consist[ing] of words intended to cause a person to do *something that person would not otherwise do*" (emphasis added)). And because the propriety of the jury instruction's definition of "entice" is not before us on appeal, we must accept that instruction as it operated in this case. Deciding the proper definition of "entice" under the applicable statute is accordingly beyond our reach. On this posture, we cannot and need not either "reject" or accept any one definition of "entice." *Supra* ¶¶ 13, 15.[1]

¶26 Moreover, the court's determination—that "under no definition" of entice would evidence of a victim's sexual naiveté/experience "be necessary to the determination of guilt," *supra* ¶ 13—is unnecessary to the resolution of the constitutional questions before us on appeal. The basis for the trial court's decision to arrest the verdict was the conclusion that evidence of prior sexual advances should have been admitted under Utah Rule of Evidence 412 because exclusion of the evidence violated Billingsley's Confrontation Clause and due process rights. *See* UTAH R. EVID. 412(a)(2), (b)(3) (stating that "evidence offered to prove a victim's sexual predisposition" is inadmissible in this type of case unless "exclusion would violate the defendant's constitutional rights"). Those constitutional questions have straightforward answers, neither of which requires us to establish acceptable parameters for the evidence required to prove enticement.

¶27 First, Billingsley argues that "[b]y denying [her] the opportunity to inquire into the alleged victims' prior sexual behavior and predisposition, . . . the trial court unjustifiably lowered the State's burden of proof on lack of consent by enticement," thus violating her right to due process. This argument fails on its own terms because Billingsley was not denied that opportunity. On

---

[1] My point is not that a teenager with prior sexual experience categorically "cannot be enticed." *Supra* ¶ 14. Nor do I mean to suggest that the prosecution is required "to prove that the victim was not predisposed to engage in sexual activity of any kind" in order to establish enticement. *Supra* ¶ 14. I agree with the court that such a requirement is incompatible with the "language and the logic of the statute." *Supra* ¶ 14. If the propriety of the jury instruction were before us, I would reject Billingsley's arguments on that score. It is not, however, and we should refrain from opining on that issue.

cross-examination, Billingsley's counsel challenged M.M. by suggesting that he had made an inappropriate comment about Billingsley's breasts to a group of students. Her counsel also elicited testimony from D.P. that M.M.'s "hormones were always raging," a notion reiterated by her counsel in suggesting that M.M. was a "walking hormone . . . up for everything" who was "looking for some action and thought he would get it with Ms. Billingsley." This testimony speaks to M.M.'s "prior sexual behavior and predisposition" just as much as the excluded evidence—what Billingsley describes as "M.M.'s flirtatious activity with a teacher." Because the jury heard this evidence, Billingsley cannot now successfully argue that the State was relieved of proving enticement.[2] Indeed, Billingsley's argument ultimately distills to a complaint that the jury failed to credit the evidence it heard about M.M.'s sexual predisposition; that argument does not implicate her due process rights in the slightest.

¶28 Billingsley's Confrontation Clause argument is similar and just as easily rejected. She contends that she was prevented from "query[ing] the alleged victims about their prior sexual knowledge, experience, or behavior on cross-examination" or from "call[ing] defense witnesses regarding the same," which violated her rights

---

[2] Even if Billingsley had been denied this opportunity, I would reject her argument that such a denial lowered the State's burden of proof for two reasons: (1) The State was not burdened with proving that M.M. was a sexual innocent. True, the jury instruction frames enticement in terms of what the victim "would not otherwise do." But, sexual innocence, while certainly relevant, is not essential to the question of enticement, even under the definition the parties adopted in this case. I can imagine many factors that could be used to determine what a victim "would not otherwise do," and nothing in the instruction requires the jury to confine its inquiry to sexual predisposition. (2) Billingsley confuses the issue by relating the State's burden of proof to the type of evidence she presented. The State's burden remained the same no matter what evidence the defense presented. So, while the defense's evidence could have made it easier or harder for the State to meet its burden, that evidence did not alter the burden itself. In my view, the only argument available to Billingsley is that it would have been harder for the State to meet its burden had the excluded evidence been admitted. But that argument does not at all implicate due process.

under the Confrontation Clause. But, as noted above, Billingsley was not prevented from doing these things. *Supra* ¶ 27. The jury heard about M.M.'s past inappropriate remark about Billingsley and his status as a "walking hormone." The most that Billingsley can say is that she would have liked to introduce more and better evidence of this type. But "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (internal quotation marks omitted). With this evidence in play, it was hardly "impossible" for Billingsley to confront M.M. with evidence of his sexual predisposition.

¶29 This is all we need say to resolve this case. That is not to say that I do not understand the court's desire to do more. Conditioning a sexual crime on the child-victim's sexual past and proclivities—as the jury instruction in this case seemed to do—is objectionable on many levels. In a case where that issue was squarely before us, I would join the court's analysis on that point. But this is not that case. I would resolve the issue presented in this appeal by deciding that Billingsley had a constitutionally sufficient opportunity to explore M.M.'s sexual predisposition, even absent the excluded evidence.

————