COURT OF APPEALS
DECISION
DATED AND FILED

September 17, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.** **2018AP231**
**2018AP232-CR**

Cir. Ct. Nos. 2010CF93
2011CF273

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

SHANE T. ROBBINS,

DEFENDANT-APPELLANT.

APPEALS from a judgment and orders of the circuit court for Shawano County: WILLIAM F. KUSSEL, JR., Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  In these two consolidated cases, Shane Robbins, pro se, appeals a judgment of conviction for thirteen felonies and two postconviction orders.  He raises thirty issues.  We conclude that Robbins is procedurally barred from obtaining the relief he seeks in the first consolidated case, and that none of the issues he raises in the second consolidated case have merit.

## BACKGROUND

¶2    Robbins worked on a dairy farm owned by Larry and Sarah, and he cohabitated with Sarah's daughter, Barbara, in  a separate residence.[1]  Appeal No. 2018AP231 primarily involves allegations of sexual assault made against Robbins by Barbara's five-year-old daughter, Isabel, who lived with Barbara and Robbins (Isabel's case).  Appeal No. 2018AP232 primarily involves allegations of sexual assault made against Robbins by Barbara's eight-year-old sister, Grace, who lived on the farm with Larry and Sarah (Grace's case).  Although the cases have overlapping factual backgrounds and have been consolidated for that reason, they were tried separately and are before us in different procedural postures.

*Appeal No. 2018AP231*

¶3    In Isabel's case, Robbins was convicted of first-degree sexual assault—intercourse with a person under the age of twelve; first-degree sexual assault—sexual contact with a person under the age of thirteen; child abuse—

---

[1] This matter involves two victims related by blood.  Pursuant to WIS. STAT. RULE 809.86(4) (2017-18), we will use pseudonyms for the names of the victims and all of their family members.  All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

intentionally causing harm; and two counts of exposing genitals to a child. This court affirmed Robbins' conviction on direct appeal in a no-merit proceeding. *State v. Robbins*, No. 2012AP2805-CRNM, unpublished op. and order (WI App Apr. 1, 2014). Our opinion explicitly addressed the sufficiency of the evidence, inconsistencies in the testimony of Isabel and other witnesses, a claim that Robbins was unable to adequately view Isabel during her testimony, several allegations of juror bias, potential sentencing issues, and Robbins' counsel's performance. *Id.* at 2-6. We further stated that we had independently reviewed the entire record and found no other issues of arguable merit. *Id.* at 6.

¶4 Following his direct appeal, Robbins filed a pro se motion seeking a new trial pursuant to WIS. STAT. § 805.15, which we construe as a motion seeking postconviction relief pursuant to WIS. STAT. § 974.06.[2] Robbins alleged that his trial counsel had provided ineffective assistance by: (1) failing to challenge "insufficient notice" as to the particulars of Count 3 (about which Isabel provided testimony that was inconsistent with her prior statements); (2) failing to move for a mistrial in response to an amendment of the complaint; (3) failing to adequately investigate potential defense witnesses—including Isabel's four-year-old-brother, who provided a videotaped forensic interview—and present them at trial; (4) failing to challenge an allegedly inaccurate statement the prosecutor made during closing argument; (5) failing to move to strike a juror; (6) failing to demand a "bill of particulars" linking each of the counts to more specific alleged conduct;

---

[2] WISCONSIN STAT. § 805.15 is located in a chapter of the statutes that applies to civil cases, not criminal cases. Therefore, Robbins is not entitled to any relief under that section. Given his pro se status, however, we will look to the substance of his arguments rather than limiting ourselves to the erroneous label he placed on them.

3

(7) failing to investigate and present photographs taken during Isabel's sexual assault examination and to hire an expert witness to explain them; and (8) failing to challenge the unanimity of the verdict on Count 2.

¶5     The circuit court held a hearing on Robbins' motion for a new trial. It concluded that most of the claims raised therein were procedurally barred because they had already been addressed in the no-merit proceeding before this court, and that Robbins had failed to establish his counsel performed deficiently with respect to the remaining claims. Robbins appeals from the order denying his motion for a new trial.

*Appeal No. 2018AP232*

¶6     In Grace's case, Robbins was charged with thirteen offenses, all alleged to have occurred in the Town of Herman between February 1, 2009 and April 6, 2010, and some in specific ways and places. The complaint and Information described the charged offenses as follows: (1) child enticement—causing a child under the age of eighteen to go into a building to have sexual contact and sexual intercourse; (2) first-degree sexual assault—having sexual intercourse with a child under the age of twelve; (3) first-degree sexual assault—having anal intercourse with a child under the age of twelve (in a haymow in a barn); (4) first-degree sexual assault—having vaginal intercourse with a child under the age of twelve (on a couch at the victim's sister's home); (5) first-degree sexual assault—having anal intercourse with a child under the age of twelve (on a couch at the victim's sister's home); (6) first-degree sexual assault—having vaginal intercourse with a child under the age of twelve (in the bedroom of the victim's sister's home); (7) first-degree sexual assault—forcing a child under the age of twelve to perform fellatio (in the basement of the victim's sister's home);

(8) child enticement—causing a child to go into a room (in the basement of the victim's sister's home) where he forced her to perform fellatio; (9) exposing a child to harmful material—showing a child images of explicit sexual conduct; (10) causing a child under the age of thirteen to view sexually explicit conduct on a computer; (11) exposing genitals—showing his penis to a child on multiple occasions; (12) exposing pubic area—causing a child to expose her pubic area to him on multiple occasions; and (13) physical abuse of child—intentionally causing bodily harm to a child while sexually assaulting her.

¶7      At trial, Larry testified he owned a dairy farm and lived on it with his wife Sarah and their five children, including Grace, who was born in January 2002. His stepdaughter Barbara lived near the farm. There was a calf barn on the farm with a haymow on the upper level that could be considered a secluded place. Larry employed Robbins to help out on the farm, including feeding calves in the barn. Larry sometimes observed Grace going into the barn while Robbins was feeding the calves.

¶8      Sarah testified that she had six children, including Barbara and Grace, and three grandchildren by her daughter Barbara, including Isabel. Grace and Isabel often played together and would stay over at each other's houses because they were close in age. One evening, Barbara called Sarah in hysterics, telling her that Robbins had confessed to molesting Isabel. Sarah subsequently spoke with Grace, and Grace told her that Robbins had touched her and done other things to her, as well. Sarah contacted the authorities and took Grace to a hospital to have a nurse perform a sexual assault examination. Grace began crying while being swabbed during the examination because she was sore in her anal area.

¶9   Barbara also testified that Grace and Isabel often played together, including in the barn on Larry and Sarah's farm while Robbins was working. Grace would frequently stay overnight at Barbara's house, and Barbara would sometimes leave the children alone there with Robbins. On occasion, Barbara saw Robbins go into the basement, which contained a bedroom, while Grace was in the basement. Barbara also said that she kept a red bottle of lubricant on her bedroom dresser.

¶10   Robbins' father, Thomas Muth, testified that Robbins came over to his house on the evening that Barbara confronted Robbins about Isabel's sexual assault allegations. During their discussion, Robbins told Muth that he had a problem and thought he was a pedophile, and he agreed to seek help.

¶11   The nurse who examined Grace found a "very significant" injury to Grace's hymen, and she noted in her report that Grace had experienced pain during the examination. Based on her experience, the nurse concluded Grace had suffered a sexual assault.

¶12   Grace testified that she knew Robbins as her sister's boyfriend and that she often visited Barbara and Robbins' house to play with Isabel and stay overnight. Grace said Robbins had sex with her in the calf barn, at Barbara's house, at her own house, and in the haymow "a lot."

¶13   In the first incident Grace described, Grace was looking at kittens on the ground floor of the barn when Robbins walked her up to the haymow. Robbins placed Grace on a hay bale so she was kneeling facing away from him, and he pulled her pants and underwear down to her knees. Robbins then took a red bottle out of his pocket and "put it on his wee-wee," and then put his

"wee-wee" into her bottom. The State introduced drawings on which Grace had circled a male crotch area with labels of "wee-wee" or "wiener," had circled a female vaginal area with a label of "private," and had circled a female anal area with a label of "bottom."

¶14    In the second incident Grace described, Robbins took both Grace and Isabel up to the haymow. Robbins told Grace to put her mouth on his wee-wee, but she refused, and so he made Isabel do it. Grace did, however, see Robbins' wee-wee on that occasion.

¶15    In the third incident Grace described, Grace was by the heifers in the barn when Robbins again took Grace up to the haymow. He placed her in one of the calf hutches, even though she tried to get away. Robbins then put his wee-wee in her private.

¶16    In the fourth incident Grace described, Robbins made Grace sit down and put her mouth on his wee-wee while he stood in front of her in the lower level of the calf barn.

¶17    In the fifth incident Grace described, Grace was lying on the couch one night at Barbara's house with Robbins lying behind her when Robbins pulled her pajama pants down and put his wee-wee in her butt. Grace said Barbara was sleeping in her room when this incident occurred.

¶18    In the sixth incident Grace described, Grace went to take a nap during the day in Barbara's room while Barbara was out getting groceries. Grace was on her back sleeping when Robbins came into the room, pulled her pants down, and started having sex with her in her bottom.

7

¶19 In the seventh incident Grace described, Grace was sleeping in Isabel's bed at night when Robbins came in and put his wiener in her private.

¶20 In the eighth incident Grace described, Robbins had sex with Grace in Isabel's brother's bedroom, but Grace could not recall much about that incident.

¶21 In the ninth incident Grace described, Robbins took the red bottle down to the basement in Barbara's house and had sex with Grace in her private, in a toy house that was located down there.

¶22 In the tenth incident Grace described, Robbins made Grace put his wiener in her mouth while in the basement of Barbara's house.

¶23 In the eleventh incident Grace described, Robbins took Grace and Isabel into a bathroom at Barbara's house and then put his wiener in each of their mouths.

¶24 Grace also testified that, on three occasions, Robbins had shown her on a computer pictures and videos of people having sex.

¶25 The circuit court provided the jury with verdict forms and instructions consistent with the Information, without providing any more specificity as to the geographic location or orifices involved in Counts 1 and 2. The jury convicted Robbins of all thirteen counts. The court sentenced Robbins to fifty-seven years of initial confinement and twenty-seven years of extended supervision.

¶26 In a no-merit proceeding following Robbins' conviction, this court raised potential issues regarding the unanimity of the verdict on Counts 1 and 2; multiplicity relating to those counts; and the sufficiency of the evidence to support

Count 4. *State v. Robbins*, No. 2013AP1115-CRNM, unpublished order at 1-4 (WI App Sept. 2, 2015). In particular, we noted there was no apparent way to determine which of the multiple alleged incidents to which Grace testified related to Counts 1 and 2, and therefore no way to determine whether the jurors had agreed upon which of those incidents occurred and formed the basis for those charges. We further observed that there did not appear to be any testimony relating to vaginal intercourse on a couch, as alleged in Count 4, raising a question as to whether the jury might have relied upon the same incident for more than one charge. Rather than file a supplemental no-merit report, postconviction counsel voluntarily dismissed the appeal and filed a postconviction motion under WIS. STAT. RULE 809.30, seeking to vacate five of the counts of conviction, claiming: (1) insufficient evidence to support the verdicts on Counts 4 and 6; (2) ineffective assistance of counsel for failing to challenge the sufficiency of the evidence on Counts 4 and 6; (3) ineffective assistance of counsel for failing to argue a lack of unanimity as to Counts 1, 2, 4, 6 and 8; and (4) ineffective assistance of counsel for failing to raise a multiplicity challenge to Counts 1, 2, 4, 6 and 8.

¶27 While counsel's motion to vacate was pending, Robbins filed a series of pro se motions seeking additional postconviction relief. In his first pro se motion, Robbins claimed the circuit court violated his due process right to notice of the charges by allowing Grace to testify to additional instances of anal intercourse than those set forth in the Information. Robbins further challenged the sufficiency of the evidence to support the verdicts on Counts 3 and 5. In Robbins' second pro se motion, he claimed the jury had not been properly instructed and the court had improperly admitted other acts evidence relating to uncharged allegations of assault. In Robbins' third pro se motion, he challenged a perceived

9

inconsistency between Counts 7 and 8, and a lack of notice as to where, when and how Counts 9 through 13 were alleged to have occurred. As a remedy for these and similar alleged errors, Robbins sought to have the judgment of conviction vacated in full.

¶28    After holding an evidentiary hearing on the claims of ineffective assistance of counsel raised by postconviction counsel, the circuit court permitted Robbins to discharge postconviction counsel and proceed pro se. The court then denied all of the postconviction motions Robbins had pending under WIS. STAT. RULE 809.30. We construe Robbins' appeal from the order denying his RULE 809.30 motions as including his judgment of conviction in Grace's case.

¶29    Therefore, we now have before us a successive appeal from an order denying a WIS. STAT. § 974.06 motion in Isabel's case, and a first appeal as of right from the judgment of conviction and order denying postconviction relief in Grace's case.

## DISCUSSION

*Appeal No. 2018AP231*

¶30    Robbins raises eleven issues in his brief relating to Isabel's case. Specifically, he claims: (1) the State violated his Sixth Amendment right to be informed of the charge against him in Count 2, due to inconsistencies between Isabel's trial testimony and prior statements she had made in discovery as to where the assaults occurred; (2) he was deprived of his right to a unanimous verdict on Count 2 because Isabel testified about three incidents involving vaginal intercourse when there was only one charge alleging vaginal intercourse with Isabel; (3) he was deprived of his right to an impartial jury because the judge

10

intimidated potential jurors during voir dire; (4) he was deprived of his right to present a defense by his counsel's failure to call potential impeachment witnesses identified by Robbins; (5) he was deprived of his right to present a defense by his counsel's failure to retain and present an expert witness to evaluate the medical testimony of the sexual assault nurse examiner; (6) the State violated his Fifth and Fourteenth Amendment due process rights by presenting evidence of uncharged conduct at trial; (7) there was insufficient evidence to support the verdict on Count 3; (8) the prosecutor suborned perjury by presenting testimony from Isabel that differed from her prior statements; (9) the prosecutor engaged in misconduct during closing argument by misrepresenting that Robbins' DNA was found on Isabel, when the DNA technician had testified that there was only a partial profile match and she could not state that it was Robbins' DNA; (10) photographs taken during Isabel's sexual assault examination should have been produced by the prosecutor and/or defense counsel as exculpatory evidence; and (11) testimony from Isabel's brother, as set forth in a forensic interview, should have been turned over to Robbins earlier and/or produced at trial as exculpatory evidence.

¶31    The State contends all of the issues Robbins raises on appeal in Isabel's case are procedurally barred by either *State v. Witkowski*, 163 Wis. 2d 985, 473 N.W.2d 512 (Ct. App. 1991), or *State v. Escalona-Naranjo*, 185 Wis. 2d 168, 517 N.W.2d 157 (1994). *Witkowski* holds that "[a] matter once litigated may not be relitigated in a subsequent postconviction proceeding no matter how artfully the defendant may rephrase the issue." *Witkowski*, 163 Wis. 2d at 990. *Escalona-Naranjo* holds that an issue that could have been raised in a prior appeal or in a postconviction motion cannot form the basis for a subsequent postconviction motion under WIS. STAT. § 974.06, unless the defendant presents a sufficient reason for failing to raise the issue earlier. *Escalona-Naranjo*, 185

11

Wis. 2d at 185. Whether a defendant is procedurally barred from filing a successive postconviction motion is a question of law subject to de novo review. *State v. Romero-Georgana*, 2014 WI 83, ¶30, 360 Wis. 2d 522, 849 N.W.2d 668.

¶32    We conclude that Robbins' first, third, fourth, fifth, seventh and eighth claims all raise variations of issues already addressed in his no-merit appeal regarding the sufficiency of the evidence, inconsistencies in the victim's testimony, the impartiality of the jury, and the performance of his counsel. Therefore, those claims are procedurally barred under *Witkowski* as having been previously litigated.

¶33    We further conclude that all of Robbins' remaining claims are subject to the procedural bar of *Escalona-Naranjo*. *Escalona-Naranjo* may be applied to a defendant whose direct appeal was processed under the no-merit procedure set forth in WIS. STAT. RULE 809.32, as long as the no-merit procedures were in fact followed and the record demonstrates a sufficient degree of confidence in the result. *State v. Tillman*, 2005 WI App 71, ¶¶19-20, 281 Wis. 2d 157, 696 N.W.2d 574. The file from Robbins' prior no-merit appeal in Isabel's case shows that the proper no-merit procedures were followed in that proceeding. Robbins filed a series of responses to his counsel's no-merit report—which were all accepted for review—and counsel filed a supplemental no-merit report in reply. This court's subsequent opinion demonstrates that we independently reviewed the record as well as the submissions by counsel and Robbins before concluding that there were no arguably meritorious issues for appeal. Nothing in our current review of the record undermines our confidence in that conclusion.[3] Therefore,

---

[3] In *State v. Fortier*, 2006 WI App 11, ¶¶24-27, 289 Wis. 2d 179, 709 N.W.2d 893 (2005), we reasoned that the failure of either counsel or this court to address an issue of "evident"

(continued)

Robbins must demonstrate a sufficient reason for why he did not raise earlier the new issues included in his current WIS. STAT. § 974.06 motion.

¶34   Robbins asserts he did not raise his second, sixth, ninth, tenth and eleventh claims in his no-merit appeal because he is untrained in the law. However, a response to a no-merit report does not need to develop sophisticated legal arguments; it is sufficient to raise potential issues in layperson's terms. Robbins failed to do even that, and thus his pro se status is insufficient to overcome the *Escalona-Naranjo* bar.  *See Waushara Cty. v. Graf*, 166 Wis. 2d 442, 452, 480 N.W.2d 16 (1992).

¶35   Robbins does not allege he was previously unaware of the factual basis for most of his claims.  For instance, we note that the second and sixth claims relating to Isabel's testimony about additional uncharged sexual acts and the ninth claim relating to the prosecutor's comments about DNA evidence during closing argument each arise from matters preserved in the record.  While Robbins' tenth and eleventh claims relate to discovery matters outside of the record, Robbins does not specify when he received those materials.  Even assuming Robbins did not himself obtain copies of the photographs from the sexual assault

merit led to the conclusion that the no-merit procedures had not been adequately followed to warrant confidence in the outcome of the appeal.  The Wisconsin Supreme Court appears to have approved this logic when it noted that a defendant may not be barred from raising an issue that the court of appeals and appellate counsel "*should* have found."  **State v. Allen**, 2010 WI 89, ¶63, 328 Wis. 2d 1, 786 N.W.2d 124.  It is therefore implicit in our statement that we retain confidence in the outcome of the no-merit proceeding that we do not share the defendant's view of the merits of the issues that he now seeks to raise.  To address in detail why that is the case, however, would undermine the judicial efficiency that is supposed to be achieved by applying the procedural bar of **State v. Escalona-Naranjo**, 185 Wis. 2d 168, 517 N.W.2d 157 (1994).

examination[4] or a transcript of the interview of Isabel's brother until after the disposition of his no-merit appeal, he would have known from the trial testimony that photographs may have been taken during the sexual assault examination and that Isabel's brother was alleged to have been present during one of the incidents, and he could have mentioned his lack of access to the discovery materials in his response to the no-merit report. In short, we are not persuaded that Robbins had a sufficient reason for failing to raise any of his new issues in his no-merit appeal.

*Appeal No. 2018AP232*

¶36    Robbins raises nineteen issues in his brief relating to Grace's case. As best we can determine from Robbins' often disjointed assertions, he claims: (1) there was insufficient evidence on Count 1 to show that Robbins made Grace go into a building, because Grace testified she was already in the barn when Robbins led her up to the haymow; (2) there is a uniformity problem with Count 2 because, absent any specificity in the Information or verdict form regarding what genitalia or orifices were involved in the charged conduct and in what geographic location the conduct was alleged to have occurred, there is no way to determine which of the multiple incidents described by Grace each juror relied upon for that conviction; (3) the lack of specificity in the Information regarding Count 2 is a "formal defect" under WIS. STAT. § 971.26, rendering Robbins' conviction on that count invalid; (4) the evidence was insufficient to support the verdict on Count 3 because the nurse who examined Grace did not report any injuries to Grace's anal

---

[4] It is not clear from the record before us that the nurse actually took any photographs during the sexual assault examination in this case. She testified only that it is her common practice to do so when she sees something she feels should be documented.

area; (5) there was insufficient evidence to support the verdict on Count 4 because Grace never testified to any act of vaginal intercourse occurring on the couch at Barbara's house; (6) there was insufficient evidence to support the verdict on Count 4 because the nurse who examined Grace did not report any injuries to Grace's anal area; (7) there was insufficient evidence to support the verdict on Count 6 because Grace never testified to any act of vaginal intercourse occurring on the bed in Barbara's room; (8) there was insufficient evidence to support the verdict on Count 7 because, contrary to her trial testimony, during a forensic interview Grace had denied putting her mouth on Robbins' "wee-wee"; (9) there was insufficient evidence to support the verdict on Count 8 because, contrary to her trial testimony, during a forensic interview Grace had denied putting her mouth on Robbins' "wee-wee"; (10) the discrepancy between Count 7 alleging oral sexual intercourse in Barbara's basement and the related Count 8 alleging oral sexual contact in Barbara's basement constitutes a formal defect rendering the conviction on each count invalid pursuant to § 971.26; (11) Robbins was deprived of an impartial jury with respect to Count 1 because the jury found him guilty without any definitive way to know upon which conduct each juror based his or her decision; (12) Robbins was deprived of an impartial jury with respect to Count 2 because the jury found him guilty without any definitive way to know upon which conduct each juror based his or her decision; (13) Robbins was deprived of an impartial jury with respect to Count 3 because the jury found him guilty despite expert testimony that there were no injuries to Grace's anal area; (14) Robbins was deprived of an impartial jury with respect to Count 4 because the jury found him guilty despite the lack of any testimony or evidence regarding an act of vaginal intercourse on the couch in Barbara's house; (15) Robbins was deprived of an impartial jury with respect to Count 5 because the jury found him

15

guilty despite expert testimony that there were no injuries to Grace's anal area; (16) Robbins was deprived of an impartial jury with respect to Count 6 because the jury found him guilty despite the lack of any testimony or evidence regarding an act of vaginal intercourse on the couch in Barbara's house; (17) Robbins was deprived of an impartial jury with respect to Count 7 because the jury found him guilty despite the lack of any testimony or evidence regarding an act of oral sex in the basement of Barbara's house; (18) the State improperly introduced bad acts evidence relating to additional, uncharged sexual conduct between Robbins and Grace; and (19) Robbins' trial counsel provided ineffective assistance by failing to object to the above-identified inconsistencies in the charges and the evidence.

¶37    Because many of these issues overlap, we will address several of them together in categories of related claims. We will also address some of the arguments out of order to provide a coherent structure to our opinion.

**1. Other Acts Evidence**

¶38    Robbins' eighteenth claim is that Grace's testimony about several uncharged sexual assaults constituted the introduction of other acts evidence. Specifically, Robbins challenges the admission, without notice or objection, of Grace's testimony about the third incident (an act of vaginal intercourse occurring in a calf hutch in the haymow), the fourth incident (an act of fellatio occurring in the lower level of the calf barn), the sixth incident (an act of anal intercourse occurring in Barbara's bed), the seventh incident (an act of vaginal intercourse occurring in Isabel's bed), the eighth incident (an unspecified sexual act occurring in the bedroom of Isabel's brother), and the ninth incident (an act of vaginal intercourse occurring in the basement of Barbara's house).

16

¶39 As a general matter, evidence of "other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith." WIS. STAT. § 904.04(2)(a). Nonetheless, other acts evidence may be admitted to show some motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident that reduces the possibility that the charged conduct was innocent. *Id.* Wisconsin courts apply a "greater latitude rule" that permits more liberal admission of other acts evidence in sexual assault cases—particularly those involving children. *State v. Marinez*, 2011 WI 12, ¶20, 331 Wis. 2d 568, 797 N.W.2d 399. Moreover, pursuant to § 904.04(2)(b), evidence of "any similar act by the accused is admissible" in criminal proceedings alleging defined sexual assault offenses.

¶40 Here, we are satisfied upon our de novo review[5] that Grace's testimony relating to each of the challenged incidents was admissible under either or both of the greater latitude rule and WIS. STAT. § 904.04(2)(b). In short, all of the incidents of uncharged conduct were similar to the charged conduct because they involved the same people and occurred in the same two buildings—namely Larry and Sarah's barn and Barbara's house.

---

[5] We ordinarily review the circuit court's admission of other acts evidence under the erroneous exercise of discretion standard. *State v. Sullivan*, 216 Wis. 2d 768, 780, 576 N.W.2d 30 (1998). Here, however, the court was not called upon to make any ruling on other acts evidence because no objection was made. Rather than go through an additional layer of analysis to determine whether Robbins' counsel should have raised an objection, we will address the issue de novo.

**2. Claims Regarding the Sufficiency of the Evidence**

¶41    Robbins' first, second, forth, fifth, sixth, seventh, eighth and ninth claims challenge, respectively, the sufficiency of the evidence to support the first eight counts of his conviction.  We review the sufficiency of the evidence to support a criminal conviction by comparison to the instructions actually given to the jury, as long as those instructions conform to the statutory requirements of the charged offense.  *State v. Beamon*, 2013 WI 47, ¶22, 347 Wis. 2d 559, 830 N.W.2d 681.  In doing so, "we give great deference to the trier-of-fact and do not substitute our judgment unless the evidence, viewed most favorably to the verdict, is so lacking in probative value and force that no reasonable fact-finder could have found guilt beyond a reasonable doubt."  *State v. Routon*, 2007 WI App 178, ¶17, 304 Wis. 2d 480, 736 N.W.2d 530.

¶42    With respect to the first child enticement charge (Count 1), the circuit court informed the jury that Robbins was charged with causing Grace, who had not attained the age of eighteen, to go into a building to have both sexual contact and sexual intercourse.  With respect to the second child enticement charge (Count 8), the court informed the jury that Robbins was charged with causing Grace, who had not attained the age of eighteen, to go into a room in the basement of Barbara's house to have sexual contact.  The court further instructed the jury with respect to both child enticement counts that the offense "is committed by one who with intent to have sexual contact or sexual intercourse

with a child causes any child who has not attained the age of 18 years to go into any vehicle, building, room, or secluded place."[6]

¶43    With respect to the first-degree sexual assault charges (Counts 2 through 7), the circuit court informed the jury for each count that Robbins was charged with having sexual intercourse with Grace, who was under the age of twelve.  The court further instructed the jury that the offense of first-degree sexual assault of a child "is committed by one who has sexual intercourse with a person who has not attained the age of twelve years."  The court also provided the jury with verdict forms specifying that Count 3 involved anal intercourse in the haymow; Count 4 involved vaginal intercourse on the couch at the victim's sister's home; Count 5 involved anal intercourse on the couch at the victim's sister's home; Count 6 involved vaginal intercourse in the bedroom at the sister's home; and Count 7 involved forced fellatio in the basement of the victim's sister's home.  The verdict form for Count 2 did not provide any additional specifications as to the nature or location of the charged conduct.

¶44    In addition, with respect to both the child enticement and sexual assault counts, the circuit court instructed the jury that sexual contact means an intentional touching of an intimate part, either directly or through clothing, for the

_____

[6] The jury instructions also set forth the following elements of the crime that the State needed to prove for each of the child enticement counts: (1) Robbins caused Grace to go into a building; (2) with the intent, or mental purpose, to have sexual contact or intercourse with her; (3) exposing a sex organ to Grace or causing Grace to expose a sex organ; (4) when Grace was under the age of eighteen years.  It appears that the third element was erroneously included in the instructions because it relates to a different statutory subsection for child enticement than that with which Robbins was charged.  However, Robbins does not challenge this inconsistency in the instructions.  Therefore, in this opinion, we will evaluate only whether the evidence was sufficient to satisfy the properly articulated statutory standard, which was also provided to the jury.

purpose of sexual arousal or gratification. The court instructed the jury that sexual intercourse means any intrusion, however slight, by any part of a person's body or of any object, into the genital or anal opening of another, and also includes oral contact with the clitoris, vulva or penis.

¶45 Robbins argues the evidence was insufficient to support the verdict on Count 1 because Grace testified that she was already in the barn when Robbins took her up to the haymow. Therefore, Robbins reasons, the State did not show that he took Grace into "a building," as alleged in the Information. However, Larry testified that the haymow was a "secluded place." That testimony was an alternate means of proving the charge of child enticement, and Grace's testimony about the first incident supported that theory.

¶46 Robbins argues the evidence was insufficient to support the verdict on Count 2 because the Information and verdict forms did not specify the nature or the location of the act being charged. However, as discussed above, the sufficiency of the evidence is evaluated in comparison to the jury instructions, not the Information. The location of the act is not an element of the crime of sexual assault, and there are multiple options for proving the nature of the act. Grace's testimony about the third incident (vaginal sex in the haymow), the fourth incident (fellatio in the lower level of the barn), the sixth incident (anal sex in Barbara's bedroom), the eighth incident (sex in the bedroom of Isabel's brother), the ninth incident (vaginal sex in the basement), and eleventh incident (fellatio in the bathroom) each would satisfy the elements for the generalized sexual assault charge in Count 2. As we will address more fully below, any question as to which incident matched which count goes to the question of unanimity of the verdict, not the sufficiency of the evidence.

¶47    Robbins argues the evidence was insufficient to support the verdict on Counts 3 and 5 because the sexual assault nurse examiner did not report having observed any actual injuries to the tissue in Grace's anus.   Tissue damage, however, is not an element of the crime that needed to be proved.   Grace's testimony about the first incident was sufficient, in and of itself, to satisfy all of the elements of the sexual assault charged in Counts 3 and 5.   In addition, the jury was entitled to view as corroborating evidence the testimony from both the nurse and Barbara that Grace's anal area was sore to the touch.

¶48    Robbins also argues the evidence was insufficient to support the verdict on Count 4 because Grace never testified to an act of vaginal intercourse on the couch, as alleged in the Information and set forth in the verdict form.   It is true that a conviction cannot be sustained based upon a theory not presented to the jury.   *State v. Wulff*, 207 Wis. 2d 143, 152, 557 N.W.2d 813 (1997).   Again, however, the location of the sexual act was not an element of the crime.   The theory of the crime for Count 4 was vaginal intercourse.   Grace described two instances of vaginal intercourse that were not linked to other counts: the third incident (vaginal intercourse in a calf hutch in the haymow) and the ninth incident (vaginal intercourse in a toy house in the basement).   Grace's testimony regarding either incident was sufficient to satisfy the elements of sexual assault on Count 4 under the State's theory of vaginal intercourse.

¶49    Robbins argues the evidence was insufficient to support the verdict on Count 6 because there was no testimony about an act of vaginal intercourse on a bed.   This argument mischaracterizes the record because Grace's testimony about the seventh incident described Robbins putting his "wiener" in Grace's private on Isabel's bed.

21

¶50    Finally, Robbins argues the evidence was insufficient to support the verdicts on Counts 7 and 8 because there was no testimony about an act of fellatio in the basement. This argument also mischaracterizes the record because Grace's testimony about the tenth incident described Robbins putting his "wiener" in Grace's mouth in the basement. Robbins further argues the evidence was insufficient on this count because Grace had previously denied, during a forensic interview, that she had ever put her mouth on Robbins' "wee-wee." However, it does not appear the forensic interview was ever entered into evidence. Moreover, even if the interview had been entered into evidence, the jury would be entitled to resolve any conflict between Grace's trial testimony and prior inconsistent statements. Such inconsistent statements do not render testimony that supports the verdict insufficient.

### 3. Claim Regarding Unanimity of the Verdict

¶51    Although Robbins labels his second claim as a challenge to the sufficiency of the evidence to support Count 2, his argument relating to that claim—particularly in conjunction with his argument on claim twelve, this court's prior order on Robbins' no-merit appeal, and the postconviction motion filed by his counsel—appears more properly to raise a question of the unanimity of the verdict on that count. The issue could be raised only in the context of an ineffective assistance of counsel claim because it was not preserved by an objection at trial.

¶52    The right to a jury trial includes the right to a unanimous verdict. *State v. Lomargo*, 113 Wis. 2d 582, 590, 335 N.W.2d 583 (1983). Unanimity does not require agreement as to alternate means or ways that a crime could have been committed. *State v. Derango*, 2000 WI 89, ¶14, 236 Wis. 2d 721, 613

N.W.2d 833. However, when the jury is presented with evidence as to more than one crime, the verdict must be unanimous as to each crime. *State v. Chambers*, 173 Wis. 2d 237, 257, 496 N.W.2d 191 (Ct. App. 1992).

¶53    The standard jury instruction for unanimity when multiple crimes are charged is WIS JI—CRIMINAL 517 (2010), which states in relevant part, "[b]efore you may return a verdict of guilty, all 12 jurors must be satisfied beyond a reasonable doubt that the defendant committed the same act and that the act constituted the crime charged." Here, the circuit court did not give instruction 517, despite the presence of multiple charges containing the same elements. However, the court did instruct the jury that "[e]ach count charges a separate crime, and you must consider each one separately." This court has previously found such an instruction was sufficient to dispel the possibility of prejudice on an ineffective assistance of counsel claim regarding a potential unanimity problem where—as here—the jury returned guilty verdicts on all counts. *State v. Becker*, 2009 WI App 59, ¶¶23-24, 318 Wis. 2d 97, 767 N.W.2d 585. We presume that a jury follows the instructions given to it. *State v. Deer*, 125 Wis. 2d 357, 364, 372 N.W.2d 176 (Ct. App. 1985). We therefore conclude that Robbins could not demonstrate prejudice here from his counsel's failure to raise a unanimity challenge.

**4.  Claims Regarding the Impartiality of the Jury**

¶54    Robbins' eleventh, twelfth, thirteenth, fourteenth, fifteenth, sixteenth and seventeenth claims are all labeled as relating to the impartiality of the jury. However, Robbins does not cite to any evidence in the record to show the jury was biased other than he was convicted of the charges against him, nor does he develop any explanation as to how or why any member of the jury would have

23

reason to be personally biased against him. Rather, each of these claims is merely a reframing of the other arguments Robbins previously made regarding the sufficiency of the evidence or the unanimity of the verdicts. Therefore, we will not separately address these undeveloped additional claims, which have already been encompassed in our discussion of other issues above.

## 5. Claims Regarding Formal Defects

¶55 Robbins' third and tenth claims are based upon a misunderstanding of WIS. STAT. § 971.06. That is a harmless error statute providing that mere defects in the form of charging documents do *not* render a resulting conviction invalid. To the extent that the statute has any application at all to this case, it would support the circuit court's decision, not undermine it.

*By the Court.*—Judgment and orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.